# Buckman v. Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Damages—Death—Evidence as to profits—Leading questions —Life expectancy.*

1. In an action by a woman against a railroad company to recover damages for death of plaintiff's husband, the plaintiff is a competent witness to testify as to the amount of profits which the deceased made in his business; but if she testifies that she has no definite knowledge as to the amount of business transacted by her husband, or the profits he realized from it, and makes no attempt to give any figures until figures are suggested to her in leading questions, which she immediately adopts in her testimony, such evidence is improper and a verdict and judgment based upon it will be reversed by the appellate court.

2. On the trial of an action to recover damages for death caused by the negligent act of another, the plaintiff should show the life expectancy of the deceased.

Argued Jan. 12, 1910. Appeal, No. 152, Jan. T., 1909, by defendant, from judgment of C. P. No. 3, Phila. Co., March T.,

1904, No. 3,362, on verdict for plaintiff in case of Ella P. Buckman v. Philadelphia & Reading Railway Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before MOSCHZISKER, J.

At the trial the jury returned a verdict of $15,450, upon which judgment was entered for $15,000, all above that sum having been remitted. Defendant appealed.

*Error assigned* was the admission of the plaintiff's testimony quoted in the opinion of the Supreme Court.

*Wm. Clarke Mason,* for appellant.—The evidence of the earning capacity of the decedent was speculative: McHugh v. Schlosser, 159 Pa. 480; Wallace v. R. R. Co., 195 Pa. 127; McKenna v. Gas Co., 198 Pa. 31; Burns v. R. R. Co., 219 Pa. 225.

The record shows no evidence of the personal expenditures of the decedent upon which the jury could fix the amount to be deducted from his net earnings to ascertain the balance representing the value of his life to the widow and children: R. R. Co. v. Butler, 57 Pa. 335; R. R. Co. v. Dale, 76 Pa. 47; Iron Co. v. Rupp, 100 Pa. 95; McHugh v. Schlosser, 159 Pa. 480; McCracken v. Traction Co., 201 Pa. 384; Goodhart v. R. R. Co., 177 Pa. 1; Wallace v. Penna. Co., 219 Pa. 327.

*A. S. L. Shields,* for appellee.—There was ample evidence of decedent's earning capacity and of the pecuniary value of his life to his family: Penna. R. R. Co. v. Butler, 57 Pa. 335; Mansfield Coal Co. v. McEnery, 91 Pa. 185; Simpson v. R. R. Co., 210 Pa. 101; Wilson v. Wernwag, 217 Pa. 82; Hendler v. Quigley, 38 Pa. Superior Ct. 39; R. R. Co. v. Coyle, 55 Pa. 396; R. R. Co. v. Dale, 76 Pa. 47; Wallace v. Penna. R. R. Co., 195 Pa. 127.

Sufficient evidence was adduced of decedent's habits of expenditures: Carpenter v. Lancaster, 212 Pa. 581.

OPINION BY MR. JUSTICE MESTREZAT, February 21, 1910:
We think the manner of examining the plaintiff, while on the

witness stand, as to the amount of profits which her husband made in his truck business was objectionable and should not have been allowed. It was objected to by the defendant and is assigned for error. The action was brought by the plaintiff to recover damages for the death of her husband who she alleges was killed by the negligence of the defendant company at a grade crossing in Montgomery county. The plaintiff was the first witness called in support of her claim, and after stating that her husband had been engaged in the farming and truck business she was interrogated as to the amount of business he did and the profits he realized. She said he kept no books of account and that she could testify only from memory. After being questioned as to the net profits, the following examination in chief occurred: "Q. If you were asked the question—don't answer this question in figures—how much money was taken in from sales of the products of the farm during the last six months before your husband died, could you answer that question? A. No; I could not, exactly. Q. Could you answer how much was taken in in the month before? A. No. Q. Could you answer how much was taken in the year before? A. No, sir; I could not."

It is apparent from this examination that the witness, at that time, had no definite knowledge as to the amount of business transacted by her husband or the profits he realized from it. If the examination had stopped here, there would not have been sufficient evidence to go to the jury on the question of the deceased's earning capacity. This position was appreciated, and the examination was continued as follows: "Q. I don't mean exactly in dollars and cents; but can you state a figure and say that at least that much was taken in? A. For the whole year, you mean? Q. For six months, we will say. Could you say at least a certain sum was taken in, naming that sum? A. For six months? Q. Yes, or any given period. Say a year or say six months. Could you say at least $1,000, or $2,000, or $3,000, or $500, or whatever it may be; a figure that you are sure it came to at least that amount? A. It ought to be about $1,000 every six months, anyhow. Q. You are sure it would be at least that much that would be taken in?

A. Yes; I am sure. Q. That is for the six months prior to your husband's death? A. Yes, sir. Q. Would that represent the average of every six months right along, or would that just be that six months? A. Right along then—that was a good year. Q. That would represent, year by year, every six months $1,000? A. Yes, sir. Q. Two thousand dollars a year? A. Yes, sir. Q. Have you any way of telling how much of that had to go back to pay expenses? A. The biggest half of it. Q. Then, would you say sixty per cent went for expenses? A. Yes, sir. Q. Would you say any more than sixty per cent? A. No, sir. Q. Would you say sixty per cent represented expenses? A. Yes, sir. Q. Then you would say the profits of the business were about $800 a year? A. After the expenses came out." There was more testimony on the subject of a like character, and the part quoted is fairly illustrative of the whole.

This is the material part of the testimony on which the plaintiff relied to show the earning capacity of the decedent. It is apparent that the figures are not those of the witness, but those suggested to her by the questions. The witness, as will be observed, testified that she could not say "how much money was taken in from the sales of the products of the farm" during the six months before her husband's death, or during the month or year before. Nor did she in her subsequent testimony fix any sum until the question suggested various amounts and she adopted one of the sums named by answering: "It ought to be about $1,000 every six months, anyhow." Possibly the witness was unable to give the figures because she had not given the matter sufficient consideration before she was called to testify. We are compelled, however, to take the testimony as we find it, and from it we see that the amounts named were not those fixed by her, but those given to her during the examination. This is not permissible, and should not be allowed in the examination of a witness. A more flagrant violation of the rule prohibiting leading questions is seldom brought to the attention of a court. Such answers are not those of the witness but of the one who examined him, and hence should not go to the jury. It is not simply refreshing

the memory of a witness, but it is furnishing him the data which should be within his own knowledge.

There is no legal objection to the plaintiff showing the amount of farming and trucking which her husband did and the profits realized therefrom as tending to show his earning capacity. She, being his wife and having assisted him in the business, was a competent witness and probably would know more about the profits of the business in which he was engaged than any other witness who could be called. It was proper she should be interrogated as to the amount of business he did as well as to its value, requiring her, however, to give her own opinion and not that of another. The specifications do not, as suggested in appellant's argument, raise the question as to the proper measure of damages, but the learned trial judge, in the charge, correctly instructed the jury on the subject.

There was no evidence introduced on the trial to show the life expectancy of the deceased, and the learned court below, on the motion for a new trial, was compelled to go outside the record for "information" to justify the amount of the verdict. The plaintiff should not neglect to furnish this important evidence on the next trial.

For the reasons stated, the judgment is reversed and a venire de novo is awarded.