# Boggess *v.* Baltimore & Ohio Railroad Company, Appellant.

*Negligence—Railroads—Yards — Permissive crossing — Contributory negligence.*

1. Where a railroad company permits consignees of produce to enter its yard for the purpose of unloading cars, and it appears that there were certain plank crossings in the yard used by wagons, but that it was also necessary for consignees in order to get to their cars, to go diagonally across intervening tracks, the railroad company will be liable for the death of one of the consignees who was killed, by the negligent operation of a train, while he was diagonally crossing the tracks at a point other than the plank crossings.  Such a case is not controlled by the rules of law applicable to grade crossing cases.

*Negligence—Damages—Death — Earning capacity — Partnership profits.*

2. In an action to recover damages for death, the profits in a partnership business in which the deceased was engaged are not an element of damages in determining his earning power.  If the deceased received a salary as manager of a partnership business, or a percentage of the profits for his services as manager, it is competent to show such salary in establishing his earning power;

so also if the deceased was engaged alone in a business which required little or no capital, such as truckering or huckstering, the profits of such business may be shown.

3. Where a husband engaged in a small business with only a nominal capital invested, and having no other means of support, gives his wife a monthy allowance with which to maintain his family, for a long period of years, it is a fair inference that the sums of money so given came from his earnings, and in a proper case, such proof is admissible to show earning power at least to the extent of the amount so furnished.

Argued Oct. 30, 1911. Appeal, No. 224, Oct. T., 1911, by defendant from judgment of C. P. No. 4, Allegheny Co., First Term, 1909, No. 233, on verdict for plaintiff in case of Minerva Elizabeth Boggess v. Baltimore & Ohio Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before COHEN, J.

At the trial it appeared that the deceased was killed in defendants yard on January 20, 1908, while diagonally crossing a track in order to reach a car which he intended to unload. The evidence tended to show that the death of the decedent was due to the negligent operation of a locomotive.

The court charged in part as follows:

If you find that such permissive right of crossing and using these tracks existed, then the company was bound to take notice of such right, and to take such reasonable measures for the safety of its shippers so using the tracks, as to reasonably, by ordinary care, protect them from danger; there being in such case no presumption that the track was clear at such point, as there is in other parts of the road where such permissive use does not exist.

[If you believe from the weight of the evidence that such shippers used defendant's tracks for reaching their cars, then such use established a permission by

the company, or what is known as a permissive use, to the shippers so to do, if it existed as many years as the testimony of some of the witnesses indicates; and the company thereby incurred a liability or duty as to that class of shippers to see to it that its operations on those tracks were controlled with reasonable care.] 17.

[The company could have canceled this right of way or permissive use, if it existed, by due notice to shippers. Indeed, there is an Act of Assembly in Pennsylvania permitting all property owners, whether railroad owners or private owners, by placarding their property, to notify people not to trespass. If the company did not do so, and you find from the weight of the evidence that the permissive use as described then existed, as to crossing the tracks, the company was bound to recognize the incidental danger connected with the conditions that prevailed, so far as the safety of such shippers was concerned, in the operation of its engines along said tracks, by the exercise of prudent and reasonable methods.] 18.

Was there, gentlemen, such permissive use at the location in question? If so, did the company in the operation of its cars, use that degree of reasonable care which under the circumstances it was bound to do? You must be satisfied by the weight of the evidence that the company, or its agents and officers at this location, had notice, either actual or constructive, by a reasonably long lapse of time, by reasonably frequent and general use by those and other shippers, before you can determine that there was a permissive crossing. Did the company have such notice that these tracks were used in manner and form as indicated by the testimony so as to constitute a permissive way? That is for you.

The defendant presented inter alia the following points:

["Ninth. The jury must disregard the evidence as to the amount of profits made by the deceased, G. W.

Boggess, in his business during the time that he was in partnership with the two other men named by the plaintiff."

This point is affirmed, as qualified by the terms of my charge later on this question.] 9.

["Tenth. The jury must disregard the evidence as to the amount of profits made by the deceased, G. W. Boggess, in his business prior to the time that he was in partnership with the two other men named by the plaintiff."

This point is refused with the preceding qualification.] 10.

["Eleventh. The jury must disregard the evidence as to the amount of profits from his business which was devoted by the deceased, G. W. Boggess, to the support of his wife and family during the time that he was in partnership with the two other men named by the plaintiff."

This point is refused, with the preceding qualification.] 11.

["Twelfth. The jury must disregard the evidence as to the amount of profits from his business which was devoted by the deceased, G. W. Boggess, to the support of his wife and family prior to the time that he was in partnership with the two other men named by the plaintiff."

This point is refused.] 12.

[Now, gentlemen, to elaborate and explain the true meaning of what I suggested to you—for fear that I may not have been clear, I will qualify all these answers by saying to you and by impressing upon you that the evidence to show the profits of the deceased in a partnership business and that he furnished money in considerable amounts to his family, is not to be considered in estimating the damage sustained by reason of his death; but I say to you further, and the Supreme Court of this State has said within a few months, that

although profits derived from a business cannot be considered as earnings, yet in many cases, profits derived from the management of business may properly be considered by the jury as measuring the earning power. And this is especially true, the Supreme Court says, when the business is one which requires and receives the personal attention and labor of the owner. With these qualifying suggestions as to my answers to these points on this subject, I submit the matter to you.]

Verdict and judgment for plaintiff for $10,000. Defendant appealed.

*Errors assigned,* among others were, (9, 10, 11, 12, 17) above instructions quoting them.

*William Watson Smith,* with him *Gordon & Smith,* for appellant.—We submit that the Railroad Company did all that could reasonably be required to provide a way for the produce men to reach their cars, and that they could not, by the use of the tracks which has been described, fasten upon the railroad a permissive crossing lying between the two planked crossings which the Railroad Company had provided: Bailey v. Lehigh Valley R. R. Co., 220 Pa. 516; Mulherrin v. R. R. Co., 81 Pa. 366; Moore v. R. R. Co., 99 Pa. 301; Penna. R. R. Co. v. Mooney, 126 Pa. 244; Grant v. R. R. Co., 215 Pa. 265; Bailey v. R. R. Co., 220 Pa. 516; Kay v. R. R. Co., 65 Pa. 269.

We submit that evidence to show profits of deceased in a partnership business are not admissible in a case of this kind: McCracken v. Traction Co., 201 Pa. 384; McLane v. Rys. Co., 230 Pa. 29; Wallace v. R. R. Co., 195 Pa. 127.

*David A. Reed* of *Reed, Smith, Shaw & Beal,* with him *Allen H. Kerr* and *Young & Clay,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 2, 1912:

The husband of appellee was struck and killed by a shifting engine in the freight yards of appellant company. He was a dealer in produce and went to the freight yards on the morning of the accident to take charge of a car of produce consigned to him, which car was standing on a side track in the freight yards at a customary place for the purpose of delivery. The car was delivered at that point in order that the consignee might have reasonable and safe access to it for the purpose of unloading and removing the produce which belonged to him. The shipper as he had the right to do, designated the terminal point at which the car was to be delivered, but the railroad company in the exercise of its control and supervision of freight shipments placed the car on a track in the freight yard selected by itself as a proper place to make the delivery. By placing the car at that point the consignee and those acting under his authority had a right to assume that the place was reasonably safe for the purpose intended, and that access would be afforded for the purpose of removing the produce. The learned court below clearly points out that no matter by what route the car was approached it was necessary to cross other tracks of the railroad company before reaching it. By the diagonal way spoken of by the witnesses in the case only one track had to be crossed, while by taking the wagon route over the planked crossings, it was necessary to cross several tracks before the car in question was reached. It is not therefore a case in which the right to recover damages is defeated because the injured party chose a dangerous route when nearby there was a perfectly safe route free from danger. The main contention of appellant is that the deceased husband was guilty of contributory negligence per se because in attempting to reach the car he took the diagonal way across the intervening track, instead of following the wagon way over the planked crossings. This position

is asserted upon the theory that the case at bar is controlled by the rules of law applicable to grade crossing cases.  We cannot accept this as a sound view of the law to be applied to the facts of the case at bar.  This case is essentially different from the grade crossing cases relied on by appellant and comes more nearly within the reason and spirit of the rule laid down in Kay v. Railroad Company, 65 Pa. 269; Taylor v. Canal Company, 113 Pa. 162 and Curtis v. DeCoursey, 176 Pa. 446.  In discussing a somewhat similar question in the case last cited, the present Chief Justice said: "Persons delivering or receiving freight did not enter and use the yard by the mere permission or passive acquiescence of the company, they were not strangers or mere licensees as to whom no duty in regard to the safety of the premises, except as to unexpected or secret dangers, arose.  They were there by invitation in its technical sense, and by right.  Their use of the yard was for the mutual interest of both parties in carrying on their business arrangements, and there was an implied understanding by the company that it should be reasonably safe.  The duty of the company did not differ in kind from that which it owed to passengers in the care of its platforms and stations."  Duties grow out of circumstances, and that which in some instances would be deemed due and proper care may under other circumstances become negligence and want of care.  In the present case, the freight yards are not like those portions of the road used exclusively for the running of trains, where the railroad company has the right to expect and demand a clear track.  Here was a large freight yard intended as a proper place to deliver shipments to consignees.  The railroad company constructed the yard and placed cars in that yard at points of its own selection for the purpose of having the freight unloaded and removed.  There was an implied duty upon the railroad company to provide reasonably safe access to the cars in order that the consign-

ments of freight could be unloaded and removed by those who had the right to do so. The railroad company, its officers and employees, knew the kind of use made of the yard and in shifting trains or cars were bound to exercise care, having due regard for this authorized or permissive use. The decedent was not a trespasser, or a mere licensee, but at the time of the accident was on the property of the railroad company on his way to the car which contained his produce in the exercise of his undoubted right to have access to his own property. He chose the diagonal way, claimed to be a permissive way, and this is the sense in which the question of a permissive use came into the case. The planked crossings used by wagons were the only ones definitely marked in the yards, but even when these were used, it was frequently necessary to cross other tracks in order to reach cars at different points where they were left standing. From this it follows that the danger of crossing tracks was not obviated by using the planked crossings. Under these circumstances we are of opinion that the question of the permissive use of the diagonal way under the evidence was properly submitted to the jury. It was not a question of establishing a particular grade crossing by permissive use, but whether there was a permissive use of the diagonal way as a means of access to cars standing upon the tracks. The evidence was sufficient to warrant a jury in finding that consignees had been afforded access to cars delivered in the freight yard by a permissive use of the diagonal way. We think this was a question for the jury and we find no error in its submission.

In several of the assignments of error the question is raised whether it was proper to admit testimony tending to show the profits of a partnership business as an element of damages in determining the earning power of decedent. It is well settled as a general rule that such testimony is inadmissible as a measure of

earning power. Profits arising from a partnership business are produced in part at least by the capital invested, or by the services of the partners, or by both. Profits thus derived are not a fair measure of the earning power of one of the partners. In a suit to recover damages for personal injuries, it is the loss of individual earning power that is to be considered, and not earnings or income from capital invested by the injured party either individually or in connection with others. This always has been the rule but it is contended that some of our recent cases have authorized a departure from it, at least that they are in the nature of exceptions to the general rule. The cases relied on do give color to the respective contentions of the parties and need some explanation in order that the rule may be better understood and more definitely settled. Appellant relies on McHugh v. Schlosser, 159 Pa. 480; Goodhart v. Railroad Company, 177 Pa. 1; McCracken v. Traction Company, 201 Pa. 384, and many other cases of like import. These cases lay down the rule as to the proper measure of damages for personal injuries. One of the elements of damage recognized in all the cases is the loss of earning power, and whether temporary or permanent, as a result of the injury suffered. When the injuries result in death there is a total loss of earning power and it is for the jury to say what that loss is under the evidence when properly instructed by the court as to the true measure of damages. In the present case the death of the husband caused a total loss of earning power and the only question is how that loss shall be properly determined. The appellee and her daughter testified that for six months prior to the accident the decedent in connection with two other partners was engaged in a partnership business under the name of the Merchants Produce Company, and that the partners contributed the capital and decedent managed the business. The partnership business was conducted in a two story building

which was entirely occupied. Prior to the formation of the partnership the deceased husband had been engaged in the same business as an individual for twelve or thirteen years. These witnesses testified that at the time of his death and during all the time he was in the produce business the decedent earned about three thousand dollars a year. On cross examination appellee admitted that the earnings referred to represented profits arising from the partnership business and profits resulting from his individual business prior to the formation of the partnership. It was also in evidence that during the time the husband conducted his business as an individual he occupied all of his own two story building, and presumably used his own capital. The right to introduce this character of evidence is asserted on the authority of Wallace v. Railroad Company, 195 Pa. 127; Buckman v. Railway Company, 227 Pa. 277; and McLane v. Railways Company, 230 Pa. 29. It must be conceded that these cases, if not read in the light of the facts upon which they were decided, might very properly be cited to sustain the contention of appellee. They were not intended as a departure from the general rule but only as exceptions in cases where the earning power of an injured party could only be measured by profits derived from the management of the particular business in which he was engaged. In such cases much must necessarily depend on the character of the business. A trucker, or a huckster, having no other business, and giving his entire time to the particular business in which he is engaged, has no earning power except that resulting from the profits derived under his personal management from the sale of truck or produce. In such a case the capital invested is small and inconsequential and is represented by a horse and wagon and perhaps enough money to purchase a load of produce. His earnings depend upon the success with which he manages the business and not upon the tools with

which he works. In cases of this character, and there are many of them, it is proper to show profits derived from management as a measure of the earning power of a person so engaged. Even in such cases, profits mean the excess of receipts over expenditures, in other words, net earnings, and this should always be kept in mind in the trial of cases of this character.

Mr. Justice Sharswood in Penna. Railroad Company v. Butler, 57 Pa. 335, stated the rule to be compensation for the loss sustained without any solatium for distress of mind, and that the proper measure of the loss is what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his life. This rule differently phrased has been reiterated over and over again from that time to the present. It will be noticed that the earning power contemplated is that resulting from the intellectual or bodily labor of the injured party in his business or profession. Profits derived from invested capital are clearly excluded. In the case at bar profits derived from the partnership could not be considered as a measure of damages in determining the earning power of the decedent, and under the evidence we cannot escape the conclusion that they may have been so considered. We do not mean to say that it would be improper to show that the deceased husband received a salary as manager of the partnership business, or if he gave his services as manager for a percentage of the profits, that it could not be shown what his share of the profits was for the purpose of determining what he earned as manager. If he received a salary as manager, or if as compensation for his management he was to receive a certain share of the profits, it would be competent to prove these facts in establishing his earning power. The examination of the witnesses did not proceed along these lines and we think the testimony as to profits derived from the partnership should have been stricken from the record when

the motion was made for that purpose. As to the profits derived from his own business during the years it was conducted by the decedent as an individual, the situation is somewhat different. It was clearly incompetent to show profits derived from capital invested but the record does not inform us how much capital was invested, or how his profits may have been affected by the invested capital. There was the capital invested in the building in which the business was transacted and its rental value at least should be deducted. He must also have had considerable capital invested in order to transact so large a business, and profits arising from this investment could not be considered in ascertaining his earning power based upon intellectual or bodily labor in the management of the business. He no doubt had an earning power as the manager of his own business, but that earning power must result from his own management and bodily labor, and not from earnings derived from invested capital. The testimony in the present case does not satisfactorily show how his earnings were derived. It may be that when the case is again tried in the light of what is here said, earning power resulting from the management of the business, excluding invested capital, may be more definitely shown. Inasmuch as the case is to be again tried, it may be well to suggest that earning power which is to be compensated in such cases must necessarily be the subject of substantive proof. The best proof possible under the circumstances is always required, but the nature of the proof must necessarily depend to some extent upon the kind of business or employment. If a decedent is receiving a fixed salary at the time of his death that would be a proper measure of his earning power, but if he is engaged in a small business of his own and depending upon profits for a livelihood, his earning power must be determined in some other way. Where a husband, engaged in a small business with only a nominal capital invested

and having no other means of support, gives his wife a monthly allowance with which to maintain his family, for a long period of years, it is a fair inference that the sums of money so given come from his earnings, and in a proper case such proof is admissible to show earning power at least to the extent of the amount so furnished. In the present case the deceased husband furnished his wife for several years immediately preceding his death a monthly allowance of one hundred and fifty or two hundred dollars for the purpose of maintaining his family, and since the evidence shows he depended upon these earnings for a livelihood, we think it was proper to submit this proof to the jury on the question of earning power. This, perhaps, would not be true if considerable sums had been furnished at irregular intervals, or if there was nothing to indicate that the money so furnished represented his regular earnings. In McCracken v. Traction Company, supra, relied on by appellant, there was nothing to indicate that the allowance represented regular earnings, or that it was not paid out of invested capital, or that it was even paid at regular intervals. In the case at bar this evidence is sufficient to carry the case to the jury on the question of earning power, but there was error in submitting the testimony relating to profits as hereinbefore pointed out. For this reason we reverse the case.

As to the negligence af the defendant, and the contributory negligence of the decedent, we are of opinion that the case was for the jury, and upon these questions we see no reversible error in its submission.

Judgment reversed and a venire facias de novo awarded,