# Milligan v. Philadelphia & Reading Railway Company, Appellant.

*Negligence — Contributory negligence—Railroads — Horse and wagon—Grade crossing—Collision—"Stop, look and listen"—Conflicting evidence—Case for jury.*

1. The traveler at a grade crossing after stopping is required to continue to look and listen as he goes forward and to be vigilant as long as danger is to be apprehended.

2. In a negligence case where plaintiff's evidence in chief and that of his witnesses make out a case free of contributory negligence, the case is for the jury although some of the answers on cross-examination might indicate negligence on the part of the plaintiff.

3. In an action against a railroad company to recover for personal injuries sustained by reason of plaintiff's wagon being struck at a grade crossing, the case is for the jury and a verdict and judgment for the plaintiff will be sustained where it appears that plaintiff stopped, looked and listened when within twenty-five feet of the track, and then proceeded forward continuing to look and listen; that just as the horse stepped on the track plaintiff for the first time saw an engine about 100 feet distant; that he struck the horse and it jumped forward but the rear wheel of the wagon was caught by the tender of the engine, which was running backward, and plaintiff was thrown to the ground and sustained the injuries complained of; that the engine approached at the rate of forty-five miles per hour without warning; that the collision occurred after sundown and there was evidence to show the presence of haze or fog and that darkness was approaching; and plaintiff's testimony that he could see only 300 to 400 feet from the point where he stopped was corroborated by other witnesses, although contradicted by witnesses for the defendant.

Argued March 26, 1918. Appeal, No. 364, Jan. T., 1917, by defendant, from judgment of C. P. No. 3, Philadelphia Co., Sept. T., 1915, No. 1227, on verdict for plain-

tiff in case of John M. Milligan v. Philadelphia & Reading Railway Company. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass for personal injuries. Before FERGUSON, J.
The facts appear by the opinion of the Supreme Court.
Verdict for plaintiff for $9,940 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment n. o. v.

*Wm. Clarke Mason,* for appellant.—Plaintiff was guilty of contributory negligence as a matter of law: Myers v. B. & O. R. R. Co., 150 Pa. 386; Darbrinsky v. Pennsylvania Co., 247 Pa. 177; Bernstein v. Penna. R. R. Co., 252 Pa. 581; Paul v. Philadelphia & R. Ry. Co., 231 Pa. 338; McIntyre v. Pittsburgh, 238 Pa. 524; Hauser v. Central R. R. Co., 147 Pa. 440; Stoker v. Philadelphia & R. Ry. Co., 254 Pa. 494; Lapinco v. Philadelphia & R. Ry. Co., 257 Pa. 344; Smith v. Penna. R. R. Co., 256 Pa. 501; Reigner v. Pennsylvania R. R., 258 Pa. 257; Higbee v. Atlantic City R. R. Co., 244 Pa. 233; Hare v. Philadelphia & R. Ry. Co., 65 Pa. Superior Ct. 39; Walsh v. Penna. R. R. Co., 222 Pa. 162; Mouer v. Cumberland V. R. R. Co., 231 Pa. 638; Nelson v. Pittsburgh Cen., Etc., Ry. Co., 57 Pa. Superior Ct. 541; Carroll v. Penna. R. R. Co., 12 W. N. C. 348.

*John J. McDevitt, Jr.,* for appellee.—The case was for the jury: Kauffman v. Penna. R. R. Co., 237 Pa. 227; Shaffer v. Pennsylvania R. R. Co., 258 Pa. 288; Hamilton v. P., B. & W. Ry. Co., 252 Pa. 615; Waltosh v. P. R. R., 259 Pa. 372; Carroll v. P. R. R., 12 W. N. C. 348; Fink v. Smith, 249 Pa. 541; Fritz v. New York, Chicago and St. Louis R. R. Co., 236 Pa. 447; Buckman v. Philadelphia & Reading Ry. Co., 232 Pa. 351; Bush v. Philadelphia & Reading R. R. Co., 232 Pa. 327; Rottmund v.

Penna. R. R. Co., 225 Pa. 410; Howard v. B. & O. R. R. Co., 219 Pa. 358.

OPINION BY MR. JUSTICE WALLING, May 6, 1918:

This is an action of trespass to recover for personal injuries sustained in a grade crossing accident. The Chester branch of defendant's railway extends southerly through Philadelphia and crosses the Island Road at grade near Seventy-ninth street. It is a diagonal crossing as the road leads northwesterly. The Bell Road station building is on the southwest corner of the crossing; and the Bell Road Inn is on the north side of the Island Road about 260 feet east of the railway. West of the inn is a coal yard surrounded by a high board fence that extends westerly to within about thirty-five feet of the railway, then turns north apparently along the right of way. Two telegraph poles stand at the corner of the fence and a few feet nearer the track is another pole on which is a stop, look and listen sign. A house stands on the southeast corner, just how near the track does not appear. At the time in question the railroad consisted of a single track, a view of which to the north could not be had, by a westbound traveler on this road, until he had passed the corner of the fence. Just before six o'clock on the evening of September 29, 1915, the plaintiff, accompanied by a Mr. Baxter, drove a horse and runabout or road wagon west in this road until they came to the inn, where they made a brief stop, then reëntered the wagon and went on. Plaintiff testifies he had never been there before and was driving a strange horse and when within about twenty-five feet of the track he stopped, looked in each direction and listened, then drove forward continuing to look and listen and, just as the horse stepped on the track, plaintiff, for the first time, saw an engine coming from the north, about 100 feet away, when he struck the horse with the lines and it jumped forward; but the rear wheel of the wagon was caught by the tender, as the engine was running backward; by

which plaintiff was very seriously injured and his companion was killed. Plaintiff's testimony that he stopped, looked and listened is corroborated by several eye-witnesses. Two passenger coaches were attached to the engine, and the evidence for plaintiff justified a finding that the train was going about forty-five miles per hour, without lights and without giving any warning of its approach to the crossing, which was a much-used public highway in the suburbs of the city. There was no safety gate or watchman at the crossing. It was after sundown and evidence for plaintiff tended to show the presence of some haze or fog and approaching darkness. Plaintiff's own testimony, that from where he stopped he could see north along the track only from 300 to 400 feet, was corroborated by that of two other witnesses. To clear the track plaintiff had to go more than thirty-five feet from the point where the evidence indicates he stopped; in which space there was apparently no permanent obstruction between him and the approaching train, while there were some trees near the railway. The train was seemingly moving about eleven times as fast as plaintiff and ran some six hundred feet after the accident.

Plaintiff's evidence is strongly contradicted by that for the defense, as the latter tends to show that the train was going twenty-five to thirty miles per hour, with lights on engine and tender; that due and timely warning was given by whistle and bell; that the weather was perfectly clear and daylight yet good; and that from where plaintiff says he stopped there was a clear view to the north so an engine could be seen for thirty-four hundred feet. The last statement is supported by observations made and photographs taken just one month after the accident. There was some dispute as to how near the track it was necessary to be to clear the fence line. This depended on whether it was the distance along the road or direct to the railway, and was not of controlling importance as plaintiff concedes that the stop was after he had passed that line. The trial judge refused defendant's request

for binding instructions and later entered judgment for plaintiff on the verdict; from which defendant appealed.

The question of defendant's negligence was clearly for the jury; the only real controversy is whether plaintiff was as matter of law guilty of contributory negligence. In our opinion he was not. The finding that he stopped, looked and listened, and at the proper place, is supported by ample evidence; in fact is not seriously controverted. He was struck as the rear wheel of the wagon was clearing the last rail and not immediately as he drove upon the crossing, hence, the rule of Carrol v. Penna. R. R. Co., 12 W. N. C. 348, that it is vain for a man to say that he looked and listened, if, in spite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive and was immediately struck, while entirely sound, does not apply. See Rottmund v. Penna. R. R. Co., 225 Pa. 410; Howard v. B. & O. R. R. Co., 219 Pa. 358; Muckinhaupt v. Erie Railroad, 196 Pa. 213; Waltosh v. P. R. R., 259 Pa. 372. The traveler at the crossing as he goes forward, after the stop, is required to continue to look and listen and be vigilant so long as danger is to be apprehended. That is what plaintiff testifies he did; but it is strenuously urged that had he actually done so he must have seen the oncoming train before he was committed to the act of crossing; that is the most serious question in the case. Plaintiff was bound to see what was plainly visible. If, as defendant's evidence tends to show, it was light and plaintiff had a clear view of the track for over three thousand feet and drove in front of a train that was coming in plain sight, then there could be no recovery. But there is a conflict in the evidence, not only as to the length of the view, but as to the daylight and the condition of the atmosphere, whether clear, hazy or foggy; also as to signals and whether there were lights on the engine or tender; as well as to the speed of the train, which had an important bearing on the question of contributory negligence. Forty-five miles an hour is sixty-six feet per second. An engine

running backward at that rate over the crossing of a suburban street, without light, signal or warning, especially in the twilight, creates a danger that even a careful traveler upon the highway may not always be able to avoid. Plaintiff says he was looking but did not and could not see the engine until it was within about one hundred feet. This is corroborated by defendant's engineer, who says he was looking ahead, but did not see the horse and wagon until the engine was within ten or fifteen yards of the crossing. His view was equal to plaintiff's. The real question is what could be seen there under conditions then existing. True, witnesses seem to have seen the side of the train at a greater distance, but that was a larger view. Doubtless defendant's witnesses when called there on a bright afternoon could see the track for a long distance; that is indicated by their testimony and also by the photographs then taken. That was October 29th, when there would naturally be less foliage than in September; that possibly might somewhat affect the view. Plaintiff's evidence in chief and that of his witnesses seem to make a case free of contributory negligence, while some of the answers on cross-examination might indicate the contrary, if so, it was still for the jury: Ely v. Pittsburgh, C., C. & St. L. Ry. Co., 158 Pa. 233; Shaffer v. P. R. R., 258 Pa. 288, 292. Plaintiff had to look in both directions and to manage his horse; in our opinion there is sufficient doubt as to the facts and inferences to be drawn from them to render the question of his negligence one for the jury. See Fritz v. N. Y. C. & St. L. R. R. Co., 236 Pa. 447.

The assignments of error are overruled and the judgment is affirmed.