# Baxter v. Philadelphia & Reading Railway Company, Appellant.

*Negligence—Damages—Earning power—Profits—Evidence.*

1. Profits should not be used as a safe guide for measuring earning power, although they may indicate the possession of business ability and qualifications. Strictly speaking, compensation for the loss of earning power as far as possible should be limited to earnings which are the result of personal effort, either physical or mental, in which profits from invested capital, or profits from the labor of others must not be included.

2. Where it is impossible in a business enterprise to distinguish between the personal earnings of the individual and the return from the capital invested and the labor of others, the net income, or net results from such business, cannot be considered in determining the amount of damages to which the claimant is entitled. But where the predominating factor is the directing intellectual and physical labor of the individual, such business may be characterized as personal to that individual, though others with tools and equipment may aid in the work.

3. The question is, would the business if no accident had occurred have the same measure of success it always had; and would that success continue during the period of the probable life of the owner? If the answer is in the affirmative, then there is no loss on that account; but, if in the negative, since the personal equation is concerned, the uncertain factors, such as business depression, market conditions, business losses, will not be sufficient to deprive the claimant of the right to fair compensation for the loss of earning power where the latter can be fairly and approximately measured.

4. Each case must depend on the nature and extent of the business, the amount of personal direction and labor to be engaged in connection therewith, as well as the amount of capital invested and the labor employed.

5. The effect of the loss of the individual's services to the business may be indicated by evidence pointing out the pecuniary loss sustained by reason of the absence partial or total, of the personal attention and labor of the individual; not as definitely fixing the measure to value the earning power, but as an aid to the jury, after considering all the attendant circumstances involved in the business in its effort to determine what the measure should be. Atten-

tion may be called to all the depressing influences to which a business is subjected.

6. If, because of the magnitude and complexity of the business, or through death, or otherwise, this evidence be not available, then the claimant after fully describing the business, and the injured person's connection therewith should be permitted to show what the services were worth if employed under like circumstances by another in a similar capacity.

7. While the evidence to show the pecuniary loss, or the effect of the absence of the personal attention, need not be clear and indubitable, it should not be a mere guess, or a paper loss; it should be shown to exist as an actual loss; and this evidence should be subject to criticism from him who must pay the loss, to the end that the pecuniary loss claimed as the standard should not exceed that usually paid to persons performing similar services to others. A person who has personal knowledge of plaintiff's business and of the manner in which it was conducted, and the time and attention given to it, may testify as to what the services are worth.

8. We do not wish to be understood as holding that sums given for the support of the family are evidence of earning power, but where a sum of money claimed as a yearly value of earning power is derived from a business from which the claimant has his sole source of income, and this sum represents a part of the net earnings which were produced through the claimant's personal direction and superintendency, and such sum is not beyond what his services would be worth if he were employed by another in like capacity in the same business, the amount so claimed would furnish some evidence which the jury might consider in fixing the value of earning power. That, in point of fact this sum was given to the deceased's family for support, is not material; nor is it material that a minor son contributed to the business, in a small way, and was not paid a salary or wage.

9. In an action by a wife to recover damages for the death of her husband evidence is properly admitted to show earning power, to the effect, that the deceased was a wagon builder and black- smith, and that the larger part of his business was repair work; that his only income was from such business; that he used in con- nection with the business certain machinery driven by an electric motor, the current of which was purchased; that the deceased worked in the shop like any other employee, and also acted as a superintendent in connection with the general work; that he had the assistance of his minor son and four or five employees; that while some new wagons were constructed they were sold as rapidly as built; that there was on hand at the time of his death material valued at $2,200, and his plant equipment which did not represent

an investment above that figure; and that out of the income he gave to his wife approximately $1,800 yearly for the support of his family.

*Trial—Charge—Request for instruction.*

10. Where a trial judge has in his general charge instructed the jury as to a particular subject, it is not error for him to refuse a point which is substantially a repetition of what was covered by the charge.

*Negligence—Railroads—Death at crossing—Photograph.*

11. On the trial of an action to recover damages for the death of plaintiff's husband at a railroad crossing, photographs in evidence showing a view of the crossing on a clear day, are not conclusive of the distance which could be seen along the tracks, if it appears that the accident occurred in the evening at dusk, and that a view along the tracks at the time could not be obtained for more than several hundred feet.

Argued Jan. 20, 1919. Appeal, No. 86, Jan. T., 1919, by defendant, from judgment of C. P. No. 1, Philadelphia Co., March T., 1916, No. 3946, on verdict for plaintiff in case of Catherine Baxter v. Phila. & Reading Ry. Co. Before STEWART, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before PATTERSON, J.

Verdict and judgment for plaintiff for $19,000. Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions.

*Wm. Clarke Mason,* for appellant.—The measure of damage in this case, if the plaintiff is entitled to recover at all, must be based upon evidence showing the earning capacity of the decedent during the year prior to his death: Boggess v. B. & O. R. R. Co., 234 Pa. 379; Gilmore v. Phila. Rapid Transit Co., 253 Pa. 543.

*Owen J. Roberts,* for appellee.—The authorities are uniform to the effect that where the personal labor and

superintendence of the decedent were the principal ele-
ments creating his earnings, even though he had some
invested capital, the amount regularly contributed by
him to his family which was earned in his business may
be proved.    Any other rule would practically result in a
verdict only for nominal damages in many death cases:
Buckman v. P. & R. Ry. Co., 227 Pa. 277; Simpson v.
Penna. R. R. Co., 210 Pa. 101; Wallace v. Penna. R. R.
Co., 195 Pa. 127; Boggess v. B. & O. R. R. Co., 234 Pa.
379; McLane v. Pitts. Rys. Co., 230 Pa. 29; Gilmore v.
P. R. T. Co., 253 Pa. 543; Foster v. Butler County Light
Co., 255 Pa. 590.

Opinion by Mr. Justice Kephart, April 28, 1919:

The facts presented by this appeal are substantially
the same as those contained in the appeal of Milligan v.
Phila. & Reading Ry. Co., 261 Pa. 344.    Baxter, husband
of the present appellee, was killed at Island Road cross-
ing, Philadelphia, by a collision between the appellant's
train and a runabout in which he and Milligan were rid-
ing.    Milligan was driving.    From a verdict in the wife's
favor this appeal was taken.    The assignments of error,
which complain of the refusal of the court below to
direct a verdict for the defendant and to enter judgment
on its motion n. o. v., are without merit.

An effort was made to show contributory negligence on
the part of Baxter and his companion Milligan.    Mr. Jus-
tice Walling, in the case of Milligan v. P. & R. Ry.
Co., supra, discusses this question, and there is no evi-
dence in the present case to change the conclusion there
reached.    Whether Baxter could see the train coming,
had he looked, or whether it was too dark to see it, were
questions for the jury to determine.    Photographs were
received in evidence showing a view of the grade cross-
ing and the tracks on a clear day.    While this might have
been helpful, the inquiry was more directly concerned
with the conditions existing on the ground on the day
of the accident and the effect that the partial absence of

daylight would have on the conditions as there presented. At the time the accident occurred it was evening—getting dusk—and a view along the tracks could not be obtained for more than several hundred feet. It was testified that the photographs did not represent all the physical conditions on the ground as they were when Baxter was killed. The photographs then would not be controlling, either as to the extent of the view, or that, under all the circumstances, due care had not been used by Baxter and Milligan. All this was for the jury under proper instructions from the court, which were given.

Baxter was a wagon builder and blacksmith; his only income was from that business. The machinery used in connection with the business consisted of a band saw, planer, drill press, emery wheel and smoothing iron; these were driven by an electric motor, the current for which was purchased. Baxter, the decedent, worked in the shop like any other employee, and also acted as a superintendent in connection with the general work. He had the assistance of his minor son and four or five employees. The larger part of the business was repair work. While some new wagons were constructed, they were sold as rapidly as built. There was on hand, at the time of Baxter's death, material valued at $2,200, and his plant equipment did not represent an investment above that figure. Out of the income he gave to his wife approximately $1,800 yearly for the support of his family. Evidence of the foregoing facts was offered for the purpose of measuring his earning power and, as such, was objected to for the reason that it did not properly show personal earnings as distinguished from the profits of the business. In the latter was included the return from a small amount of capital invested and the toil of others which, with the deceased's earnings, less certain deductions for expenses made up the net profits of the plant. It was from this sum the wife was given her allowance for maintenance.

In actions for personal injuries, the loss of earning power is an important element to be considered in estimating the damages suffered. As stated in many of our cases, the value of the earning power contemplated is that resulting from the intellectual or bodily labor of the injured party in his business or profession. Profits derived from invested capital, or the labor of others, are clearly excluded. Earnings are the result of labor, the price of services performed. Profits are the net gains from an investment or the prosecution of some business: Goodhart v. Penna. R. R. Co., 177 Pa. 1, 15. Profits should not be used as a safe guide for measuring earning power, although they may indicate the possession of business ability and qualifications. Strictly speaking, compensation for the loss of earning power as far as possible should be limited to earnings which are the result of personal effort, either physical or mental; in which profits from invested capital or profits from the labor of others must not be included. Where it is impossible, in a business enterprise, to distinguish between the personal earnings of the individual and the return from capital invested and the labor of others, the net income, or net result from such business, cannot be considered in determining the amount of damages to which the claimant is entitled. But where the predominating factor is the directing intellectual and physical labor of the individual, such business may be characterized as personal to that individual, though others with tools and equipment may aid in the work. It is much like dentists and doctors with their instruments, or lawyers with their books, and stenographers and assistants. The personal feature prevails over the investment of an insignificant amount of capital or labor employed. Such capital and labor are incidental, though important, to the performance of the personal services. It is the latter which makes the practice successful; it is the service of the individual that is the real life of the business or the profession.

The idea of personal effort, physical and mental, is not confined to professional or similar services.   It extends to a person engaged in a business, as when the neighborhood blacksmith shoes a horse correctly, he may count on the continued patronage of the horse owner, though in his shop he may have such assistants as his business demands, and his business thrives not only through services well done and because of personal friendship or relationship, but because it, or any other like place, fills the community demand.   It is the worth of this individual's connection with the business that causes the trouble in ascertaining  a fair  criterion for  estimating  earning power.   The difficulty comes, not from expressing the rule to govern, but in applying it to a given case.  Difficulties, however, should not prevent the application of the rule to a just and reasonable extent.   It must be remembered the general rule is that the worth of earning power, as applied to a business, must not be made up from profits, which represent earnings from invested capital, or the labor of others, or both.

In all of the cases where earning power may be measured in part by profits, it cannot be done with the certainty that a daily or monthly wage is fixed, either in connection with the business directly under consideration or apart from and attached to another business. The yearly value of the services of one who owns, manages and labors with others, with invested capital, is subject to many conditions which do not confront us in the ascertainment of the earning power when we consider a monthly wage, or the earnings of professional men, or men engaged in similar occupations.   The owner of a business encounters the continued financial requirements of his undertaking; the effect of business depression, with its attendant loss, the destroying influence of competition, labor conditions, market supply, prices, and loss through ordinary business attention, such as loss through unwise contracts, unused supplies or materials, etc., these

with other factors are the deterring circumstances in business enterprises.

With these matters in view, the question must then be put: Would the business, if no accident had occurred, have the same measure of success as it always had; and would that success continue during the remaining period of the probable life of the owner? If the answer is in the affirmative, then there is no loss on that account; but, if in the negative, then, since the personal equation is concerned, these uncertain factors will not be sufficient to deprive the claimant of the right to fair compensation for the loss of earning power, where the latter can be fairly and approximately measured.

The deceased was engaged in the repair business and occasionally in the manufacture and sale of a commodity. From this business he made a profit which was not subject to the hazard of a strictly contract price, with its accompanying liability to errors of judgment, fluctuations of cost, etc. This fair, average return, or profit, was practically the same for several years before the accident, under varying conditions. It was made up, first, from the intellectual and physical labor of the individual as owner and manager; second, the uncertain return from the use of machinery and profits on materials sold, or the net return from invested capital; third, the net earnings from the labor of others. Was the business then of such character that it could be said the earnings were so mixed that it could not be determined what his services were worth to the conduct of the business that he was engaged in; or, in other words, the earning power of the deceased could not be fairly ascertained?

We have intimated that the right of the injured party to be compensated for loss of earning power is a substantial one, and some reasonable and trustworthy test must be adopted else he will be wholly deprived of the value of this important element of damage. It was not due to the deceased's act that such test has been made necessary; but, nevertheless, it would be wrong to set up a standard

for estimating damages which is fictitious or that does not fairly represent what the services are worth. If all of the yearly profits in cases similar to the one under discussion were used in ascertaining the total or partial value of earning power, there would be included the earning power of others, as well as that of the individual under consideration, to say nothing of the return, large or small, from the capital invested. "The loss of profits in conducting a business involving the labor of others is not a necessary consequence of personal injury to the plaintiff": Silsby v. Michigan Car Co., 95 Michigan 204. Each case must depend on the nature and extent of the business, the amount of personal direction and labor of the party engaged in connection therewith, as well as the amount of capital invested and the labor employed. The effect of the loss of the individual's services to the business may be indicated by evidence pointing out the pecuniary loss sustained by reason of the absence, partial or total, of the personal attention and labor of the individual; not as definitely fixing the measure to value the earning power, but as an aid to the jury, after considering all the attendant circumstances involved in the business, in its effort to determine what the measure should be. Attention may be called to all the depressing influences to which a business is subjected. If, because of the magnitude and complexity of the business, or through death, or otherwise, this evidence be not available, then the claimant, after fully describing the business and the injured person's connection therewith, should be permitted to show what the services were worth if employed under like circumstances by another in a similar capacity.

While the evidence to show this pecuniary loss, or the effect of the absence of the personal attention, need not be clear and indubitable, it should not be a mere guess or a paper loss; it should be shown to exist as an actual loss. It must necessarily be the subject of substantive proof, and this evidence should be subject to criticism

from him who must pay the loss, to the end that the pecuniary loss claimed as the standard should not exceed that usually paid to persons performing similar services for others.  Care must be taken not to make the responsible party an insurer of prospective profits.  The jury should have the right to consider this criticism; otherwise defendant would be powerless to oppose claims that might come within the rule, but which experience teaches are exorbitant.  See Goodhart v. Penna. R. R. Co., supra; Wallace v. Penna. R. R. Co., 195 Pa. 127; McLane v. Pittsburgh Rys. Co., 230 Pa. 29; Buckman v. Phila. & Reading R. R. Co., 227 Pa. 277; McCracken v. Traction Co. (No. 2), 201 Pa. 384; Boggess v. Baltimore & Ohio R. R. Co., 234 Pa. 379.  A person who has personal knowledge of the plaintiff's business and of the manner in which it was conducted and the time and attention given to it may testify as to what the services are worth: Simpson v. Penna. R. R. Co., 210 Pa. 101.

In the case now under consideration, the deceased contributed approximately $1,800 a year, for some years prior to his death, to the support and maintenance of his family; this did not represent the total amount of earnings that had been set aside as profits, for, out of the profits, he paid the installments due on the building used in connection with this business and for his home.  The evidence gives a detailed description of the character of the business and of the services performed by the deceased and his employees.  Statements from which might be found the gross volume of business and gross expenses as they relate to the standard for measuring the earning power here claimed, the per cent of the whole fund as profit, and the part set aside from that per cent for some years prior to the deceased's death.  The yearly pecuniary loss claimed was confined to this $1,800 per year, or the amount set aside from profits regularly contributed toward the support of his family.  Considering the capital invested, the labor employed, the character of the services performed by deceased, and the earning realized

therefrom, with all the other evidence in the case, the yearly amount claimed could well have been found as a conservative estimate of the value of his services to his business; and, under the circumstances, this fairly represented a yearly amount which might be accepted by the jury as a safe aid in fixing the loss of earning power.

We do not wish to be understood as holding that sums given for the support of the family are evidence of earning power, but where a sum of money, claimed as a yearly value of earning power, is derived from a business from which the claimant has his sole source of income, and this sum represents a part of the net earnings which were produced through the claimant's personal direction and superintendency, and such sum is not beyond what his services would be worth if he were employed by another in like capacity in the same business, the amount so claimed would furnish some evidence which the jury might consider in fixing the value of earning power. That, in point of fact, this sum was given to deceased's family for support is not material; for the evidence as to what was done with the money was not specifically objected to on any such ground.

The fact that his son contributed to the business, in a small way, and was not paid a salary or wage, does not affect the situation. His father supported him and he was entitled to his services during minority; but this, as we have endeavored to show, like the services of others, is not included in his earning power. We do not think the court erred in admitting evidence, or in its charge to the jury.

The third and ninth points, as presented, assumed, as undisputed, evidence clearly in dispute, as we have already pointed out. In fact the case hinged to a great extent on this evidence. The points could not have been unqualifiedly affirmed. If the time of day had permitted a photograph to be taken that would represent the conditions as they were at the time of the accident, this evidence might have been more persuasive. The court did

not err in its answer to these points. As the court had in its general charge instructed the jury as to the headlight it was not error then to refuse a point which was substantially a repetition of what was covered by that charge. We have considered the remaining assignments of error, and find no merit in them; they do not require discussion.

All the assignments are overruled and the judgment is affirmed.

See Dempsey v. Scranton, infra, 495.