### CROZAT v. TOYE BROS. YELLOW CAB CO. et al.*

#### No. 14360.

Court of Appeal of Louisiana. Orleans.
Jan. 3, 1933.

Philip R. Livaudais and Wm. Boizelle, both of New Orleans, for plaintiff.

John C. Hollingsworth, of New Orleans, for defendant Walet.

John P. Sullivan and David Sessler, both of New Orleans, for defendant Toye Bros. Yellow Cab Co.

WESTERFIELD, J.

The plaintiff in this case, Dr. George B. Crozat, was injured as the result of a collision between a taxicab, in which he was a passenger, and an Oldsmobile, for the operation of which Mr. Eugene H. Walet, Jr., is admittedly responsible, though he was not in the car at the time of the accident. The collision occurred on the 23d day of May, 1930, at about 9:30 a. m., at the intersection of the lakeside roadway of South Claiborne avenue and Audubon boulevard. The taxicab entered the intersection from Audubon boulevard and the Oldsmobile from South Claiborne. The taxicab, which was struck on the left side and in the rear by the Oldsmobile, was overturned on its right side and came to rest against a telegraph post. The day was clear and the pavement dry, so that both drivers could have seen as much as the circumstances permitted, and should have had their cars under control; there being no danger of skidding. It is the contention of the defendant Walet that the driver of the taxicab was responsible for the accident because of his failure to stop at the intersection. On the other hand, the taxicab company contends that the Walet car was alone responsible because of its excessive speed, which, it is alleged, was unchecked at the time of the impact. The evidence is in conflict as to whether the taxicab stopped before entering the intersection, as was required by the city ordinance, but, whether it did or not is, in our opinion, of no consequence, since we believe, as did the trial court, that the accident was entirely due to the fault of the Walet car, which is proven to have been driven recklessly and with excessive speed estimated to have been about fifty miles per hour; the taxicab, having been driven cautiously and very slowly across the intersection, was in sight of the Oldsmobile for nearly a full city block before it reached the intersection. Brownell, a witness for the defendant taxicab company, who was driving his Willys Knight automobile in front of the Walet car, testified that the Oldsmobile passed him at about that distance from the intersection at a terrific speed and on the wrong side. The taxicab, he said, was in the

intersection in plain view when the Oldsmobile passed him. We can see no reason why the Oldsmobile should not have checked its speed and, if necessary, stopped completely before striking the taxicab. It did neither, consequently its driver was alone responsible for the accident whether the taxicab should have stopped or not. The fact that in the vicinity of the accident there are certain shrubs or trees which, it is claimed, would obstruct the vision of a driver, particularly that of one approaching from the direction of the taxicab, had nothing to do with the accident, because the taxicab was well in the intersection and in plain sight of the Walet car for a considerable time before it reached the intersection, and ordinary prudence would have suggested that the driver of the Walet car slacken his speed or make some effort to avoid the collision.

Dr. Crozat claims $8,732.84, which he itemizes as follows:

For pain and suffering at time of the accident, treatment at Touro Infirmary and during time petitioner was confined to bed and subsequently. .................. $5,000.00
Loss of earnings during absence from business................. 3,000.00
Doctor's bills..................... 99.00
Nurses .......................... 69.00
Medicine and supplies............ 11.49
Rent and office expenses.......... 553.35
————
Total ...................... $8,732.84

He was allowed by the judge a quo $2,179.-49; that amount being made up by an allowance of $2,000 for physical suffering and $179.-49 for medical expense. The claim for loss of earnings was not allowed.

Plaintiff suffered a fracture of two ribs. He was treated at his home by his physician, Dr. Gessner, from May 23d, to May 29th, and at the doctor's office until July 24th. The injury was quite painful, and resulted in considerable mental depression. It disqualified the plaintiff from working at his profession from the date he was injured, May 23d, to July 7th, at which time he was able to devote about two hours a day until July 24, 1930, when he resumed his customary duties in connection with his practice. We believe the amount which should be allowed for physical suffering would be more in keeping with similar cases if we were to reduce it to say, $1,500.

In regard to the loss due to plaintiff's enforced absence from his office, for which he claims $3,000, and for which no allowance was made by the trial court, we have no doubt that plaintiff's income was affected as a result of his injury. Counsel for defendant contends that lost profits should not be allowed as damages because too remote, uncertain, and speculative. If, however, the plaintiff had been employed upon a salary basis, and he had lost some part of his salary during the period of his disability, there would, we feel sure, be no question of his right to recover this loss as an item of damages. We are constantly awarding damages on this account to laborers who are paid by the day, week, or month, and without objection as to the propriety of the allowance. In what respect then does the claim of plaintiff differ from salary or wages? Dr. Crozat is a dentist, or perhaps it would be more correct to say an orthodontist. He is recognized as one of the leading men in his profession, both as a teacher and as a practitioner. He maintains an office in the city of New Orleans, but three times each year he visits the city of Milwaukee for the purpose of treating patients in co-operation with other dentists in that city who make appointments for him for that purpose. It was while returning to his home from one of these periodical visits that the accident, for the effects of which this suit is brought, occurred. As we said before, we are convinced that his earnings were affected by his absence from his office during his recuperation.

Before discussing the sufficiency of proof in that regard, it would be well to note that, with the exception of an office assistant, whose duty does not involve care of patients, Dr. Crozat's entire business is personal. He alone plans and executes the treatment of his patients; his work being mainly concerned with what is colloquially known as "straightening teeth." We mention this circumstance because we deem it of importance in connection with a consideration of the law on the subject of an allowance of profits as damages which we will now discuss.

In Kelly & Son v. Yellow Cab Co., 5 La. App. 69, we declined to allow a retail store keeper an alleged profit of $20 a day during the period of his disability resulting from accidental injury, during which time he was obliged to close his store, for the reason that the damages claimed were too remote, problematical, and speculative, and had not been established with sufficient certainty. In that case a number of authorities were cited, a review of which would establish the law to be as we appreciate it is in other jurisdictions and to the effect that the determining factor in such cases is the certainty with which the loss has been established. For example, when it has been definitely proven that a decrease in earnings has resulted from inability to exercise personal effort or skill towards the production of the income and the amount of such loss has been established with reasonable certainty, an award should be made, but, when the claim for profits is interwoven with other factors, such as invested capital, industry, and skill of others whose ability and zeal contribute to the result, such profits may not be the subject of an award. To this effect is the opinion in Mahoney v. Boston Elevated

Ry. Co., 221 Mass. 116, 108 N. E. 1033, 1034, where Chief Justice Rugg, as the organ of the court, declared that profits "hoped to be derived in the future from a business are too remote and uncertain to be regarded as an element in estimating damages,"· but "decrease in income is an element to be weighed, when it arises from inability to exercise personal effort or especial efficiency directly producing the income."

In Jordon v. Cedar Rapids & M. C. Ry. Co., 124 Iowa, 177, 99 N. W. 693, 695, a hog buyer was allowed to recover for loss of earnings due to physical injuries because his business was not so uncertain in its character that "profits arising therefrom are too remote and speculative for legal proof." See, also, Lund v. Tyler, 115 Iowa, 236, 88 N. W. 333, cited in this case.

In Singer v. Martin, 96 Wash. 231, 164 P. 1105, 1109, we find the following: "In the second place, damages to business as such, especially when measured in terms of profits, which was the only measure possible under the evidence adduced, are not recoverable in an action for personal injuries, where, as here, the business involves an investment of capital, the labor of several employees, and the time and services of the wife. * * * It is only when the investment is insignificant and merely incidental to the performance of a plaintiff's personal service that profits may be taken as a measure of loss or considered as an element of damages in personal injury cases, and then only because they are in reality personal earnings."

In Baxter v. Philadelphia & R. Ry. Co., 264 Pa. 467, 107 A. 881, 883, 9 A. L. R. 504, it was said: "In actions for personal injuries, the loss of earning power is an important element to be considered in estimating the damages suffered. * * * Strictly speaking, compensation for the loss of earning power, as far as possible, should be limited to earnings which are the result of personal effort, either physical or mental, in which profits from invested capital or profits from the labor of others must not be included. * * * But where the predominating factor is the directing intellectual and physical labor of the individual, such business may be characterized as personal to that individual, though others with tools and equipment may aid in the work. It is much like dentists and doctors with their instruments, or lawyers with their books, and stenographers and assistants. The personal feature prevails over the investment of an insignificant amount of capital or labor employed. Such capital and labor are incidental, though important, to the performance of the personal services. It is the latter which makes the practice successful; it is the service of the individual that is the real life of the business or the profession."

■ Has the plaintiff in this case established with sufficient certainty the amount of his loss of earnings due to the accident for which we have found the defendant Walet responsible? The degree of certainty required does not amount to mathematical exactitude, but is such as may reasonably establish the claim. C. J. vol. 17, verbo "Damages," § 112, pp. 785, 759, 760, and 761. See, also, Wall v. Hardwood Mfg. Co., 127 La. 970, 54 So. 300.

■ The record shows the gross and net income of Dr. Crozat for the years 1928, 1929, 1930, and 1931, and a comparison of these figures indicate that during the year of his injury 1930 his income was less by $2,211.67 than the average for the other three years. This method of estimating the loss suffered by plaintiff on this account has received the approval of the Court of Appeal of New York in Ehrgott v. Mayor, 96 N. Y. 264, 48 Am. Rep. 622, where the court said: "It is certainly much better in such cases to place before the jury the amount earned by the person in his profession during a series of years before the injury. That amount may vary in the past, and looking to the future, must be uncertain, and yet the proof will furnish to the jury the best possible basis to estimate the pecuniary loss."

In Gray v. Boston Elevated Ry. Co., 215 Mass. 143, 102 N. E. 71, 73, the court said: "The instruction to the effect that in determining the amount of damages the jury might consider the amount of the plaintiff's 'average earnings, his professional reputation and his special attainments in his profession' was not open to criticism. It was competent as bearing upon earning capacity to consider what his professional attainments and reputation were."

Our conclusion is that the plaintiff has shown with sufficient certainty a loss of earnings, attributable to his accident, in the sum of $2,211.67; the balance of his claim in this regard is for fees he would have received from four new patients which due to the accident he was obliged to refuse. However, we find that this claim has not been sufficiently proven and will be disallowed. Our conclusion therefore is that Dr. Crozat should be allowed the following items of damage.

| | |
|---|---|
| Personal injury } Pain and suffering } | $1,500.00 |
| Medical expense | 179.49 |
| Loss of earnings | 2,211.67 |
| Total | $3,891.16 |

For the reasons assigned, the judgment appealed from is amended by increasing the amount awarded below from $2,179.49 to $3,891.16, and, as thus amended, it is affirmed.

**Amended and affirmed.**