## Dempsey *v.* City of Scranton, Appellant.

*Negligence—Damages—Decrease in earning power—Evidence.*

1. The income or profits an injured person derives from a business personally conducted with little or no capital and depending entirely or substantially upon his individual labor and skill, whether physical or mental, may be considered as affording the true measure of his earning capacity; but income or profits derived from a business requiring the investment of substantial capital or in which the injured person is engaged with others or where he employs the labor of others, cannot be accepted as a measure of earning capacity. In the latter case, the measure of loss is the value of plaintiff's services in the business. In either case, inquiry into the character of the business is necessary, also the capital and assistance employed, and if the case falls within the second class depreciation in profits is properly admitted only where they can be shown to be the direct result of plaintiff's absence, in which case they are received, not as a distinct element of damage, but as evidence of the value of plaintiff's services.

2. The services of a man who has by his personal labor, skill and business ability, built up and managed a business for a period of years, is manifestly worth more than the mere cost of hiring another temporarily to fill his place. The thorough knowledge of the business thus acquired, together with the personal acquaintance with the customers, has a value in the commercial world readily recognized by any business man. This being so, there is no valid reason why one responsible for an injury should be heard to say that damages based upon such consideration are merely conjectural.

3. Where a person injured was engaged in the business of selling tea and coffee from a store where he employed three clerks, and also in personally driving a wagon in a particular territory from which he sold tea and coffee, and it appears that during the period of his disability he employed another to drive his wagon at a salary of fifteen dollars a week, but that his profits fell off after his accident, to the extent of $100 or $125 a month, such falling off of profits is not the measure of his loss of earning power, where there is no evidence offered to negative the existence of other possible causes for the depreciation of earnings, such as the condition of

the market, general labor conditions, prices and other matters which might tend to cause a decrease in the demand for the particular merchandise handled by plaintiff in his business. A mere personal expression of opinion by the plaintiff that the falling off was due to his personal disability by reason of the accident, is not sufficient.

Argued Feb. 24, 1919.   Appeal, No. 150, Jan. T., 1919, by defendant, from judgment of C. P. Lackawanna Co., Oct. T., 1915, No. 230, on verdict for plaintiff in case of Michael J. Dempsey v. City of Scranton.   Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and KEPHART, JJ.   Reversed.

Trespass to recover damages for personal injuries. Before SEARLE, P. J., specially presiding.

Verdict and judgment for plaintiff for $4,500.   Defendant appealed.

*Errors assigned* were, among others:

2. In instructing the jury as follows:

"Then he is entitled to recover for loss of earnings which he has sustained up to the present time, and he has given you testimony upon that point, which we will not narrate. He testified that he has lost a certain amount by reason of being unable to give his personal attention to his business. It would be the loss which he sustained in his business by reason of his personal attention for which he could recover, and that is all; not as profit in the business, but what the business would depreciate by reason of the absence of his personal attention to it. Then he would be entitled to recover also, if you find his injuries are permanent for such future loss of earnings as he might sustain."

3. In affirming the third point for charge submitted by plaintiff. The point and answer and exception thereto being as follows:

"3. If under all the evidence in the case the jury believe that plaintiff was injured and his injury was due to the negligence of the defendant in not keeping the street

in a reasonably safe condition for travel and the plaintiff was exercising due care at the time of his injury, then the plaintiff would be entitled to recover such amount of money as the jury find he expended for medical care, medicines, nursing and hospital expenses during his illness.  The plaintiff is also entitled to recover for the loss of earning power due to his injuries by reason of the negligence of defendant taking into consideration the age of the plaintiff, his situation in life, his condition of health and habits of industry, loss of profits he sustained from his inability to give his personal attention to the management of his business and his labor in carrying on said business, all these elements may be considered by the jury in determining the plaintiff's damage in respect to his loss of his earning power.  Any such amount jury may find in such case should be as compensation only, but should be capitalized at its present worth in money, that is to say that the loss of future earning power must be anticipated by the jury to its exact equivalent, or present worth, of his future loss of earnings during the several years the jury may find the plaintiff's life expectancy is."  Answer: Affirmed.  Exception.

*R. S. Houck,* with him *Jerome K. Barrett,* for appellant.

*Joseph O'Brien,* with him *Thomas A. Donahoe,* for appellee.

OPINION BY MR. JUSTICE FRAZER, April 28, 1919:

This appeal by defendant is from a verdict and judgment for plaintiff in an action for damages for personal injuries sustained by reason of negligence on part of the City of Scranton in permitting the roadway of a street to remain in a defective condition, resulting in plaintiff being thrown from his wagon and severly injured.  The only question raised in the assignments of error relates to the correct measure of damages.

Plaintiff was engaged in the business of selling tea and coffee having a store in the Borough of Dunmore where he employed three clerks, and in addition to the business done at the store plaintiff personally drove a wagon throughout the borough and adjacent territory, from which he sold tea and coffee. He had conducted this business for fourteen years and built it up by his personal efforts. There is no evidence as to the amount of capital invested. Plaintiff testified the amount of business done decreased considerably during the time he was prevented from giving it his personal attention, and while the business was continued and profit made, the difference between the profits before and after his injury was $100 or $125 a month, or $1,200 to $1,400 a year decrease. In his opinion the falling off was due to his inability to give personal attention to his store and wagon trade. During this time he employed another to drive the wagon at a weekly salary of $15. The trial judge charged in effect that what plaintiff could recover was the loss sustained in his business by reason of his inability to give it personal attention, not as profits of the business, but as depreciation resulting from the absence of such personal attention, and also affirmed a point presented by plaintiff wherein his damage for impairment of earning power was measured by the loss of profits sustained by reason of his inability to give personal attention to the management of the business and his labor in carrying it on. The same thought appears to have been in the mind of the trial judge during the course of the trial, the evidence relating to loss of profits having been admitted, not on the assumption it was the measure of damage, but on the theory it indicated the sum plaintiff's services were reasonably worth in the business, and represented his earning power.

It is a familiar rule that loss of earning power involves an inquiry into the comparative physical and intellectual laboring capacity of the person injured, before

and after the accident.  Profits derived from the management of a business are generally not to be considered as earnings.  The reason is obvious.  Such profits usually result, not solely from the physical or intellectual labor of the person owning and managing the business, but from combined capital and labor, labor not only of the party injured but of others as well.  The amount of profits realized may also depend upon the locality in which the business is conducted, the commodities dealt in, competition encountered, and many other circumstances directly or indirectly affecting the business: Goodhart v. Penna. R. R. Co., 177 Pa. 1, 15-16.  If profits were to be accepted as a proper basis for estimating earning capacity, the fact that profits were not realized, or that a loss resulted during a particular time, or in a particular business, would indicate a total absence of earning power, even though it might appear such loss was due to causes other than the manner in which the business was conducted, and over which the individual conducting it was without power of control.

On the other hand, there are cases in which the allowance of proof of loss of profits of a business conducted with little or no capital is necessary, on the ground that, under the particular facts, such profits are entirely, or almost entirely, the direct result of the personal labor and endeavor of the owner and, consequently, constitute the best standard of earning power.  An illustration of this is Wallace v. Penna. R. R. Co., 195 Pa. 127, where the profits of a boarding house keeper were held to be a proper measure of her earning capacity, on the theory that the business was one depending upon the personal attention and labor of the owner and not upon investment of capital or the labor of others.  This principle was reaffirmed in Simpson v. Penna. R. R. Co., 210 Pa. 101, although the decision in that case was based on testimony to the effect that the plaintiff's services in the business of producing oil, to which he gave his entire time and attention, were reasonably worth a fixed sum.  In Buck-

man v. P. & R. Ry., 227 Pa. 277, profits derived from a
farming and trucking business to which the injured per-
son devoted his personal labor were assumed to be the
proper measure of earning capacity.   This ruling was fol-
lowed in McLane v. Pittsburgh Rys. Co., 230 Pa. 29,
where the trial judge excluded a question relating to
profits derived from a huckstering business plaintiff per-
sonally conducted, occupying his entire time.   In that
case we said, quoting from the opinion in Wallace v.
Penna. R. R. (page 38) : "Profits derived from capital
invested in business cannot be considered as earnings, but
in many cases profits derived from the management of
business may properly be considered as measuring the
earning power.   This is especially true when the business
is one which requires and receives the personal attention
and labor of the owner."

The question was again discussed in Boggess v. B. & O.
R. R. Co., 234 Pa. 379, where plaintiff owned an interest
in a partnership in which he received a share of the
profits and to which he devoted his personal services as
manager.   Evidence was received to the effect that de-
cedent's earnings were $3,000 a year which represented
his share of the profits arising from the business.   In
referring to the earlier cases permitting loss of profits
to be shown, we said (page 388-9) : "They were not in-
tended as a departure from the general rule but only as
exceptions in cases where the earning power of an in-
jured party could only be measured by profits derived
from the management of the particular business in which
he was engaged.   In such cases much must necessarily
depend on the character of the business.   A trucker, or a
huckster, having no other business, and giving his entire
time to the particular business in which he is engaged,
has no earning power except that resulting from the
profits derived under his personal management from the
sale of truck or produce.   In such a case the capital in-
vested is small and inconsequential and is represented by
a horse and wagon and perhaps enough money to pur-

chase a load of produce. His earnings depend upon the success with which he manages the business and not upon the tools with which he works. In cases of this character, and there are many of them, it is proper to show profits derived from management as a measure of the earning power of a person so engaged. Even in such cases, profits mean the excess of receipts over expenditures, in other words, net earnings, and this should always be kept in mind in the trial of the cases of this character......

"It will be noticed that the earning power contemplated is that resulting from the intellectual or bodily labor of the injured party in his business or profession. Profits derived from invested capital are clearly excluded. In the case at bar, profits derived from the partnership could not be considered as a measure of damages in determining the earning power of the decedent, and under the evidence we cannot escape the conclusion that they may have been so considered. We do not mean to say that it would be improper to show that the deceased husband received a salary as manager of the partnership business, or, if he gave his services as manager for a percentage of the profits, that it could not be shown what his share of the profits was for the purpose of determining what he earned as manager. If he received a salary as manager, or if as compensation for his management he was to receive a certain share of the profits, it would be competent to prove these facts in establishing his earning power."

The most recent discussion of the question will be found in Gilmore v. Phila. Transit Co., 253 Pa. 543, where plaintiff, a florist, cultivated ten acres of ground on which were located hothouses and to which he gave his personal labor and also employed one man as a helper. Plaintiff's minor son also assisted in the work. An offer to show plaintiff's receipts and expenditures, and that he leased the property and had no funds invested in the business other than that required to purchase seeds, etc., was rejected by the trial judge, as was also an offer

to prove the value of plaintiff's services in connection with the business was between $1,500 and $2,000 a year. It appeared the personal labor performed by plaintiff at the time of his injury was worth $480 a year. After calling attention (page 548) to the fact of there being no offer to prove the alleged decrease in earnings, following plaintiff's injury, was due exclusively to his impaired physical condition, or that plaintiff was rendered physically unable to superintend his business, or that it had come to a stop, but, on the contrary, it appeared as a fact that, while plaintiff was in a nervous condition, he was otherwise physically fit and the business was kept going, in affirming the judgment we approved the following from the charge of the trial judge (page 549) : "A man's business which goes on after he is hurt may have success or it may have disaster for other reasons than the accident. If he has a plant, no matter if it is a small plant, in which he raises flowers, it involves the buying of bulbs and stock and it involves the question of freeze out in winter and blight and other things which some-times make a season disastrous, although otherwise it would look very promising. A man's labor enters into that business as well as his stock, and the fact that in one year he has a good year and in another he has a bad year may be the result partly of bad business conditions and partly of conditions affecting his health. It is impossible to split them, and the law wisely says we cannot consider the results to the man's business, if it is business that goes on and if it is a business in which he could employ somebody else to do his work. In my view of the case, owing to the fact that Mr. Gilmore carried on his business until to-day, and could employ help to do what he could not do himself, the cost of the help would be something which could be considered, and not what was the effect ultimately upon his business as shown by yearly statements.".

The general rule established by the decisions and principles above referred to, so far as the subject-matter ad-

mits of the statement of a general rule, is that the income or profits an injured person derives from a business personally conducted with little or no capital and depending entirely or substantially upon his undivided labor and skill, whether physical or mental, may be considered as affording the true measure of his earning capacity; but income or profits derived from a business requiring the investment of substantial capital or in which the injured person is engaged with others or where he employs the labor of others, cannot be accepted as a measure of earning capacity. In the latter case, the measure of loss is the value of plaintiff's services in the business (Gilmore v. Phila. Transit Co., 253 Pa. 543, 548; Singer v. Martin, 96 Wash. 231; Walsh v. New York Central, etc., R. R., 204 N. Y. 58; Weir v. Union R. R. Co., 188 N. Y. 416; 8 R. C. L. Section 38). In either case, inquiry into the character of the business is necessary, also the capital and assistants employed, and if the case falls within the second class depreciation in profits is properly admitted only where they can be shown to be the direct result of plaintiff's absence, in which case they are received, not as a distinct element of damage, but as evidence of the value of plaintiff's services: Wallace v. R. R., supra; Singer v. Martin, 96 Wash. 231, 241-3; Hart v. New Haven Village, 130 Mich. 181, 186. The services of a man who, like the plaintiff in this case, has, by his personal labor, skill and business ability, built up and managed a business for a period of years, is manifestly worth more than the mere cost of hiring another temporarily to fill his place. The thorough knowledge of the business thus acquired, together with the personal acquaintance with the customers, has a value in the commercial world readily recognized by any business man. This being so, no valid reason appears why one responsible for an injury should be heard to say that damages based upon such considerations are merely conjectural.

The testimony shows plaintiff employed another to drive the wagon at a salary of $15 a week. This did not

necessarily limit to that amount the value of plaintiff's services in the business. They may have been, and probably were, worth considerably more. Their value cannot be measured by the profits of the business, however, inasmuch as others were employed in carrying it on, and capital was necessarily invested, though it does not appear to what extent. The depreciation in the profits of the business could not, for these reasons, be adopted as the measure of value of plaintiff's services. The admission of such depreciation, however, is proper if accompanied by an offer to show that the falling off was due to the absence of plaintiff's personal services in the business and not to other possible causes.

The strongest evidence in favor of plaintiff on this point is found in the following extract from his testimony: "Q. Do you know whether or not that [loss in business profits] is due to the condition of the trade or your absence? A. It is due to my absence, I know. Q. How do you know that? A. I feel that myself. Q. That is your personal belief? A. That is my personal belief. Q. Have you got any facts upon which you base that opinion or is it your own belief? A. My own belief on it; I know I could do that." This evidence shows nothing more than plaintiff's personal feeling and belief that the result was due to the cause alleged. It was merely his individual conclusion based on facts which do not appear in the record. There was no evidence offered to negative the existence of other possible causes for the depreciation in earnings, such as the condition of the market or trade, general labor conditions, prices and other matters which might tend to cause a decrease in the demand for the particular merchandise handled by plaintiff in his business. All these matters should have been placed before the jury that they might form their conclusion as to the cause of the loss of trade, whether by plaintiff's absence or by reason of other causes. In absence of proper evidence on the subject the admission of proof of loss of profits was erroneous and gave the

jury no proper basis for measuring plaintiff's earning capacity. For the reasons stated, the judgment must be reversed, and this case submitted to the jury for retrial, in accordance with the legal principles herein stated.

The judgment is reversed with a new venire.

See Baxter v. P. &. R. Ry., supra, 467.