## Clingan v. Fairchance Lumber Co.

Before Carr, P. J., Morrow and Cottom, JJ.

*Anthony Cavalcante*, for plaintiff.

*Gustav M. Berg, James J. Burns, Jr.,* and *Emmett J. McDaniel,* for defendant.

CARR, P. J., March 21, 1947.—This is an appeal from a decision of the Workmen's Compensation Board dismissing an employer's petition for the termination of a compensation agreement. The question raised is whether the fact that the injured employe now owns and manages a business from which he derives income in excess of his former wages may be disregarded in determining whether he is still totally disabled.

On October 23, 1939, claimant, while employed as a carpenter by the Fairchance Lumber Company, fell from a scaffold to the ground 25 feet below and sustained a compound comminuted fracture of the left leg two inches above the ankle, a fracture of the right oscalcis, and contusions of the back, pelvis, and right leg. His average weekly wage was $21.74, and he and his employer entered into an agreement for the payment of the statutory two thirds of his wages, amounting to $14.49 a week for total disability, beginning on October 31, 1939. On November 4, 1942, the employer petitioned the board to modify the agreement, averring that claimant's disability had decreased in that he had made a complete recovery from the injury to his back, pelvis, and right leg. The compensation authorities, after hearing, determined that though the injuries to his back, pelvis, and right leg had healed, he remained totally disabled from the residual effects of the fracture of his left ankle, and on September 3, 1943, dismissed the petition. An examination at that time disclosed swelling, redness, and limitation of motion of the ankle, and an ulcerated area above it.

The present petition, filed on December 7, 1945, sets forth that since August of 1944 claimant has been engaged in running a grocery store at no. 176 Lenox Street in the City of Uniontown, and is no longer totally disabled. In his answer, the claimant admitted that he owned the store, but averred that it was being

operated by his wife, his daughter, and other employes.

At the hearing before the referee, claimant was called as on cross-examination and testified that he opened the store on May 1, 1944, on money he had borrowed, the amount of which he was not asked; that he carries in stock groceries, meats, produce, candy, and ice cream; that he does all the buying, driving his car to supply houses to pick up merchandise, writes all the checks, keeps all the books and accounts, helps to some extent to wait on the trade, and is present at the store at all times except for three hours on two or three afternoons a week when he goes home to lie down or dress his foot; that he employs two full-time clerks, and in addition is assisted at times by his wife and four minor children; and that from May 1, 1944, to January 1, 1945, the net profits of the business amounted to about $1,800, and for the calendar year 1945 to $1,748. He testified, however, that his left leg was worse than at any time since the injury, and as there was no evidence to the contrary, the referee and the board concluded that the condition of his leg entitled him to continued compensation for total disability, notwithstanding the money he was making in his business.

The assumption by the referee and the board that only an improvement in the condition of claimant's left leg could warrant the termination or reduction of compensation is clearly erroneous. Apart from compensation for certain permanent injuries specified in section 306(c), compensation under the statute is based solely on the loss or impairment of earning power, and earning power means the whole pecuniary result of a reasonable use of all one's powers, mental and physical, whether working for others or one's self. Talents previously undiscovered or undeveloped may produce an earning power greater than that enjoyed

previous to the injury which made the continuance of the former work impossible, and in such a case there is no ground for compensation under the statute except for the injuries specified in section 306(c): Earley v. Philadelphia & Reading C. & I. Co., 144 Pa. Superior Ct. 301; Federico's Case, 283 Mass. 430, 186 N. E. 599.

Accordingly, it is the duty of the compensation authorities to consider the fact that claimant has been deriving substantial profits from his business, and to find the comparative relation of his services to the profits thereof, or else the value of the services rendered by him therein, if such a finding is possible, in order to determine the amount of his earning power despite his injury. While the profits of a business employing invested capital and the labor of others obviously cannot be regarded as having been entirely the fruit of the owner's individual earning power, yet, when it is shown that the predominating factor in the earning of the profits is the directing intellectual and physical labor of the owner, the mere fact that his own labor is not arduous or that he has the assistance of some capital and labor of others does not prevent consideration of the profits as a reasonably safe guide by which his earning power may be fairly estimated. It can hardly be thought that a man who successfully manages a store, does all the buying for it, drives his car to market and personally selects the merchandise to be sold, keeps all the books and accounts, and helps on occasion to wait on the trade, makes no valuable contribution to the succeses of the business and earns no part of the money that he gains from it: Dempsey v. City of Scranton, 264 Pa. 495; Baxter v. Philadelphia & Reading Railroad Co., 264 Pa. 467; Offensend v. Atlantic Refining Co., 322 Pa. 399; Apfelbaum et ux. v. Markley, 134 Pa. Superior Ct. 392. In the present state of the case, therefore, we are obliged to remit

the record to the board for further hearing and determination.

## Order

And now, March 21, 1947, upon consideration of the foregoing case, the exceptions ex parte defendant to the third finding of fact, the first conclusion of law, and the order of the referee and the board are sustained, the action of the board reversed, and the record remitted to the board for further hearing and determination.