# Yurko v. Penn Coat and Apron Supply Company

290

*M. H. Philip*, for plaintiff.
*Snyder, Wert & Wilcox*, for defendant.

HENNINGER, P. J., October 22, 1951.—On January 18, 1949, plaintiff was injured in the calf of his right leg when it was struck by the bumper of defendant's truck while the leg was against the bumper of plaintiff's car. There was a laceration of the skin where struck by the one bumper and where pressed against the other with resultant damage to muscle tissue and blood vessels. No bones were broken.

The accident was caused by the rolling backward of defendant's unattended truck, while parked on a 6 percent grade on Centre Street in Mauch Chunk, Pa., without having the front wheels turned toward the side of the street. At the time of the accident plaintiff was in the street at the back of his parked car, looking for a chain in the trunk of his car. Plaintiff's car was parked on his left side on a two-way street.

After the accident, plaintiff hopped to the sidewalk, there had a tourniquet applied to stop the flow of blood from his wounds, was then taken into a nearby firehouse and then removed to a hospital. There he was treated for his injuries until February 28, 1949, when he developed an embolism that settled in his chest for which he was treated until March 26, 1949, when he was discharged from the hospital. In June 1949 he returned to work but after two to three weeks was unable to continue. All this time his wounds ulcerated and refused to heal. On August 27, 1949, he returned to the hospital for pinch grafts and skin grafts which were unsuccessful. In February 1950, on advice of a druggist, he dusted his ulcers with penicillin powder, which finally healed the wounds. Since March 26, 1950, he has worked steadily at his employment, although complaining of swelling of his legs with discomfort after about four hours of work.

There is some dispute whether the embolism was independent of the injury and whether the ulceration which made a severe injury out of a slight one was due to the presence of varicosity of the veins, but in each case there is medical testimony to support plaintiff's theory and while the embolism was traumatic, it does not add greatly to the amount of damages. As to varicosity of veins, there is a familiar principle that a defendant is liable for aggravation of existing conditions as well as for aggravation of the injury due to existing conditions provided the injury is the direct

and proximate cause of the consequences: Offensend v. Atlantic Refining Company, 322 Pa. 399, 403.

The jury brought in a verdict for plaintiff for $20,-943.50, itemized as follows: Hospitalization and medical expenses $1,313.50; lost income, $5,400; pain and suffering, $5,000; anticipated income, $9,230.

Defendant has filed a motion for judgment n. o. v., which has not been pressed, and a motion for a new trial, stating as trial errors: (1) Permitting plaintiff to show profits from his business instead of loss of earnings; (2) the court's asking defendant's doctor if he was being paid; (3) refusing to permit defendant's driver to state where he customarily parked his truck; (4) discussing the law of the case in the presence of the jury; (5) permitting the jury to award damages for all of plaintiff's injuries, although they may have been aggravated by an existing disease; (6) permitting damages for future loss or diminution of earning capacity; (7) verdict against law and charge of the court in that damages were allowed for loss of business; (8) permitting damages for disfigurement; (9), (10) and (11) verdict as given demonstrably improper.

Plaintiff, to show loss of earnings during his total disability, testified that he had taken in from $525 to $595 per month from his business of cleaning beer coils and that his expenses were about $133 per month. Plaintiff's only investment was his automobile and a box of tools. At the time of the accident he turned his business over to his brother, a railroad engineer, who operated it himself for three weeks and then hired a William Hoffman to operate the route. The only condition imposed upon the brother was that so long as he operated the route he would support plaintiff's mother, with whom plaintiff lived. The history of plaintiff's business was that it was begun about 1939, had grown to 48 customers before he was called into war service, dropped to 38 customers when he was

discharged from service in 1945, increased to 45 customers in 1946 and so continued until June 1948, when a drive by enforcement agents caused others to engage plaintiff's services until in January 1949 he had between 60 and 72 customers. This diminished to 45 under the supervision of his brother and the workmanship of Hoffman and has now increased to 48 customers with plaintiff back on the job. Plaintiff testified that 48 customers are all he can serve in his present physical condition, but he can point to no one of his former customers who has employed someone else to clean their coils and he testified that "quite a few" have discontinued service because of a new automatic coil cleaning method. He claims to have lost $400 per month lost earnings during his disability and $100 per month diminished earnings in the future.

We agree with plaintiff that this is the type of case in which loss of income from a business may be used to show loss of earnings and of earning capacity, because this was a business with negligible capital and no employed labor and therefore there is a direct relationship between net income and earnings: Faber v. Gimbel Brothers, 264 Pa. 1, 4.

The formula for such proof is, however, not as simple as plaintiff would seek to make it. In the first place it is an *exception* to a general rule and to be employed only when it accurately measures plaintiff's loss. In the second place, a plaintiff does not have the choice of a measure of damages but must accept the one his particular situation calls for: Gentile v. McLaughlin, 107 Pa. Superior Ct. 489, 492; Dempsey v. Scranton, 264 Pa. 495, 504. In the third place, a plaintiff, whatever the permissible measure of damages may be, may not recover more than his actual loss: Baxter v. Philadelphia & Reading Railway Company, 264 Pa. 467, 475.

Granted that if plaintiff's injuries had resulted in the loss to him of his business, he would have been

entitled to that part of his loss which represented the fruits of his earning powers and that that might possibly have been the entire difference between his former income and expenses, we feel that plaintiff has failed in his proof.

We pass the vagueness of plaintiff's estimate of his revenues and what seems to be a low estimate of his expenses. But see Pietro v. P. R. T. Co., 298 Pa. 423, 430, and Muncey v. Pullman Taxi Service Co., 269 Pa. 97, 100.

The difficulty with plaintiff's proof is: (1) That he did not lose the business but that he gave or lent it away; (2) that he did not lose all of the benefit of the business, but that his brother assumed care of the mother *with whom plaintiff lived* and whom plaintiff apparently had been supporting; (3) since, after three weeks, all of the actual service was performed by another than the brother, no reason is given why plaintiff could not have regained control of the business at least after March 26, 1949, upon his release from the hospital, reducing his loss to the expense of hiring a serviceman, perhaps a more extravagant expense account and loss of business, if proved.

It is apparent, therefore, that plaintiff did not lose all that he might have gotten out of his business had he attended to it personally and if he had lost the entire amount it was at his own volition and not by the necessities of the case. In the Faber case cited by plaintiff, Faber limited his loss by the employment of someone to carry on his business; in this case plaintiff, relying upon his claim against defendant, made no effort to mitigate the damages. The jury's verdict was obviously based upon the full value of plaintiff's business during the period he could not engage in it personally.

We cannot ignore the fact, however, that plaintiff has suffered a loss of earnings by reason of his injury, but by reason of his neglect to furnish figures such as

the benefit to him of the support of his mother—with perhaps his own support as an incident of the mother's support—or the added expense of employing someone else to perform his duties, we are unable to arrive at any fairly accurate figure. Rather than order a new trial in the face of obvious loss, we believe that we are sufficiently generous and that justice will be served by reducing the figure for loss of earnings to the figure of $3,000 which comes to about $50 per week for the period plaintiff could not personally serve his customers. See Faber v. Gimbel Bros., supra.

When we come to the question of loss of anticipated income, the same principles apply as for loss of earnings. When it comes to future earnings, however, a new element enters into the picture, namely, the vicissitudes of business, and so forth. See Baxter v. Philadelphia & Reading Railway Co., supra, 473, and Dempsey v. Scranton, supra, 504.

While plaintiff insists that he lost business because of the absence of his personal service and that he is limited by his present physical condition to his present reduced number of customers, he admitted: (1) That he still serves the number served until customers were goaded by the Liquor Control Board; (2) that many former customers have installed an automatic device, and (3) that he cannot name a single former customer who has gone to someone else for service. He has lost no income, therefore, by his alleged inability to work the longer day he used to work and there is no proof that he lost business by reason of his inability to attend to it personally during his total incapacity.

There is no medical support for any permanent injury affording any basis for an award of damages. Plaintiff's two medical experts agreed that the time limit is past for any greater swelling of the leg from the injury and that, while there might be discomfort, there was no finding of lessening of physical ability.

Defendant's expert, who was plaintiff's best witness, said the leg might contribute to the fatigue felt by plaintiff, and that plaintiff would have some discomfort, but that use of the leg would improve it.

Much of the medical testimony was based upon the possibility of the return of an embolus from the thrombophlebitis but none expressed an opinion that this would occur and all agreed that the possibility would not lessen plaintiff's earning power unless it actually did occur. While the doctors agree that the injury was the inducing cause of the first embolism and that a person who has had one embolism is more likely than another person to have another one, their testimony is as capable of the interpretation that the injury indicated plaintiff was subject to an embolism as to the interpretation that the injury made plaintiff more vulnerable to future embolisms. The whole matter is speculative and not the subject of damages.

Since the verdict was for plaintiff, we have given no consideration whatsoever to any effect that varicosity or acromegaly might have on any disability of plaintiff's. As for plaintiff's discomfort, he was given the most generous allowance of $5,000 for pain and suffering. While plaintiff undoubtedly suffered severe pain from time to time, we are convinced the major portion of the award was for future pain and suffering and is in compensation for the discomfort caused by swelling or fatigue.

In our opinion, we must strike from the verdict the amount representing loss of anticipated income both because there is no proof of loss of anticipated income due to plaintiff's injury and because there has been no medical proof of permanent disability affecting plaintiff's earning power. We cannot, therefore, order a remittitur of any portion of that item but must strike it out altogether.

The foregoing discussion disposes of defendant's reasons 1, 7, 9, 10 and 11. The other reasons require little discussion.

Reason 2 objects to the court's asking defendant's doctor if he was being paid. The whole situation was a feeble attempt at pleasantry on the part of the court and so understood by all parties at the time. In fact, defendant entered no objection and the present alleged reason is an afterthought. Plaintiff's counsel had gotten from the doctor not only testimony of plaintiff's present condition and prognosis but also detailed directions for future treatment, seeming to use the witness for the purpose of getting free medical advice and thus eliciting the court's inquiry.

Plaintiff's injuries were caused by: (1) Defendant's failure to turn his wheels toward the side of the road while parked on an incline, and (2) permitting the brake to release itself. Either one would have fastened liability on defendant, especially in the light of its failure to explain the releasing of the brake. Much time was consumed in attempting to prove there was no curb at the place where the truck was parked, in utter disregard of the language of section 1021 of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §613, prohibiting parking upon any grade, "without turning the front wheels of such vehicle to the curb or *side of the highway.*" (Italics supplied.) In the light of the positive provisions of the law, defendant's customary actions are immaterial. The two automobiles were 50 to 75 feet apart and if defendant's wheels had been turned to the side of the highway, the chance of an accident would have been negligible.

Defendant's objection to discussion of the law in the presence of the jury is also an afterthought. We cannot recall the incident, and so we assume defendant is correct in stating that the jury could have heard the discussion. Suffice it to say that defendant's counsel

did not call for a side bar conference or object to the open discussion. Furthermore, defendant could not have been harmed by the discussion if the jury did hear it.

Defendant in its brief protests that it did not set up varicosity as a cause for the aggravation of plaintiff's injury and objects to our statement in the charge of the familiar principle incorporated in A. L. I. Restatement of the Law of Torts, §461, and there stated as follows:

"The negligent actor may be liable for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct": Offensend v. Atlantic Refining co., supra.

If defendant was not making the point that plaintiff's serious damages from a slight injury might have come from other conditions, then he was not harmed by that portion of the charge, for there was no other explanation for the serious results and defendant would nevertheless have been responsible therefor.

Reasons 6 and 8 were not pressed.

Now, October 22, 1951, it is ordered that the verdict heretofore rendered in this action be set aside and a new trial awarded unless plaintiff shall, within 20 days after service of this order upon his counsel, remit all of the verdict in excess of $9,313.50 and if such remittitur is filed, judgment may thereupon be entered by the prothonotary in favor of plaintiff and against defendant in the sum of $9,313.50 and costs.