## Sharrer v. Harman

*Donald G. Oyler*, for plaintiff.
*John A. MacPhail*, for defendants.

SHEELY, P. J., June 6, 1959 — Defendants in the above actions have filed a motion for the inspection of certain books, papers and records of plaintiff.

Plaintiff answered the rule to show cause, stating that the items requested are not relevant to the subject matter and would not substantially aid defendants in the preparation of pleadings or preparation for trial, the production of many of the items would cause unreasonable annoyance, embarrassment, expense or oppression to plaintiff: and that one item requested is privileged as a trade secret.

In one action, plaintiff, Melvin M. Sharrer, is claiming damages for injuries which he received in an automobile accident allegedly caused by negligence of defendants. As one item of damages claimed, plaintiff alleges that he was unable to follow his occupation in the flour, feed and grain business from February 4, 1957, until March 15, 1957, and thereafter was able to work only part time until the filing of this action and will in the future be able to work only part time for an indefinite period. He alleges the value of his services to be $900 per month and his loss from this source to be $16,000.

In the other action, plaintiff, Melvin M. Sharrer, as administrator of the estate of Susanna M. Sharrer, is claiming damages as the result of the death of his wife, Susanna M. Sharrer, in the same accident. In the wrongful death action, he claims the sum of $25,000 over and above his out-of-pocket expenses, and in the survival action he claims $5,000 for her pain and suffering and $50,000 for the economic value of her life. It is there alleged that prior to her death the deceased was a partner with her husband in the flour, feed and grain business and that the value of her services in the business was $5,000 per year. The firm name was D. M. Sharrer & Son.

In the motion for inspection of records, defendants seek to have produced for examination, copying and auditing, the following items:

1. Federal income tax returns for Melvin M. Sharrer and Susanna M. Sharrer for the years 1953 through 1958. (Plaintiff concedes that this is a proper request and is willing to produce these records.)

2. Balance sheets for D. H. Sharrer and Son for the years 1953 through 1958.

3. General ledger and other books of original entry for D. H. Sharrer & Son for the years 1953 and 1958.

4. The partnership agreement between Melvin M. Sharrer and Susanna M. Sharrer.

5. The customer list of D. H. Sharrer & Son for the years 1953 through 1958.

6. Canceled checks of D. H. Sharrer & Son for the period from December 1, 1956, to February 3, 1957.

7. The payroll records of D. H. Sharrer & Son for the years 1953 through 1958.

8. Profit and loss statements of D. H. Sharrer & Son for the years 1953 through 1958.

An audit of these records would give to defendants a complete analysis of the business of the partnership over a period of five years. The only proper purpose of their production and examination would be to enable defendants to prepare to defend against plaintiff's claim for loss of his own earnings and earning capacity and against the claim for the wife's estate for the economic value of her life. To determine whether they should be produced, it is necessary to consider the basis of such claims, keeping in mind the fact that the husband and wife were partners in a business that involved the investment of some capital and the employment of other persons. Whether defendants should be permitted to examine the records of the plaintiff's business depends upon the extent to which the plaintiff may use such records or information contained therein to establish his claim for damages.

The damages which are recoverable in the action brought by plaintiff on behalf of his wife's estate and on his own behalf on account of the death of his wife are stated in Siidekum v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 418 (1946):

"The administrator suing on behalf of decedent's estate was entitled to recover the economic value of her life as measured by the present worth of her likely earnings during the period of life expectancy: Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A. 2d 659. For the husband, on the other hand, recovery was limited to the loss of her services and society as a wife, less the 'probable cost of her maintenance which he would have been compelled to pay, as well as other incidental items that he would probably have given her': Gaydos v. Domabyl, 301 Pa. 523, 533, 534, 152 A. 549, 553."

In his action for damages to himself, plaintiff would be entitled, inter alia, to compensation for his loss of earning power. Since it is alleged that he and his wife were partners in a business and their earnings would have been derived from the same source, the same general rules of proof of the amount of damages would be applicable. The difficulty, of course, is to distinguish between the earning capacity of the parties and the profits of the business.

In Baxter v. Philadelphia & Reading Railway Company, 264 Pa. 467, 472 (1919), the court considered this general problem in an exhaustive opinion. It is there pointed out:

"In actions for personal injuries, the loss of earning power is an important element to be considered in estimating the damages suffered. As stated in many of our cases, the value of the earning power contemplated is that resulting from the intellectual or bodily labor of the injured party in his business or profession. Profits derived from invested capital, or the labor of others, are clearly excluded. Earnings are the result

of labor, the price of services performed. Profits are the net gains from an investment or the prosecution of some business."

In Dempsey v. City of Scranton, 264 Pa. 495, 502 (1919), the court said:

"The general rule established by the decisions and principles above referred to, so far as the subject-matter admits of the statement of a general rule, is that the income or profits an injured person derived from a business personally conducted with little or no capital and depending entirely or substantially upon his individual labor and skill, whether physical or mental, may be considered as affording the true measure of his earning capacity; but income or profits derived from a business requiring the investment of substantial capital or in which the injured person is engaged with others or where he employs the labor of others, cannot be accepted as a measure of earning capacity. In the latter case, the measure of loss is the value of plaintiff's services in the business . . . In either case, inquiry into the character of the business is necessary, also the capital and assistance employed, and if the case falls within the second class depreciation in profits is properly admitted only where they can be shown to be the direct result of plaintiff's absence, in which case they are received, not as a distinct element of damage, but as evidence of the value of plaintiff's services . . . The services of a man who, like the plaintiff in this case, has, by his personal labor, skill and business ability, built up and managed a business for a period of years, is manifestly worth more than the mere cost of hiring another temporarily to fill his place. The thorough knowledge of the business thus acquired, together with the personal acquaintance with the customers, has a value in the commercial world readily recognized by any businessman. This being so, no valid reason appears why one respon-

sible for an injury should be heard to say that damages based upon such considerations are merely conjectural. . . .

The admission of such depreciation, however, is proper if accompanied by an offer to show that the falling off was due to the absence of plaintiff's personal services in the business and not to other possible causes."

When the foregoing rules are considered in connection with the allegations in the present case, the difficulty confronting defendants becomes apparent. How will plaintiff prove the earning capacity of himself and his wife? Was the predominating factor in the business the directing intellectual and physical labor of the two partners or either of them? If plaintiff can show this to be true then the business could be characterized as personal to those ·individuals and profits of the business might be used as a measure of earning capacity. But even if this cannot be shown, it is incumbert upon plaintiff to show the nature and extent of the business, the amount of personal direction and labor of claimants, as well as the amount of capital invested and the labor employed. He might also attempt to show that a depreciation in profits was the direct result of the absence of himself or his wife.

The books of the company would be important under any of these circumstances. As indicated in the Baxter case, the pecuniary loss must be the subject of substantive proof, and the evidence of it should be subject to criticism by the person who must pay the loss, "otherwise the defendant would be powerless to oppose claims that might come within the rule, but which experience teaches are exorbitant."

We conclude that defendants cannot properly prepare for trial on the issue of damages without examining the records of plaintiff's business. Plaintiff concedes that they are entitled to examine the income tax

statements. We think they are also entitled to examine the balance sheets, the profit and loss statements, the general ledger and books of original entry and the partnership agreement, if any.

We do not think that they are entitled to the customer list of the company. Aside from plaintiff's contention that this is privileged as a trade secret, it is evident that examination of the list of customers would not indicate the nature and extent of plaintiff's business.

The payroll records would be important in indicating the extent to which the labor of others entered into plaintiff's business and would be a proper subject for examination.

The cancelled checks of the business would not disclose anything not reflected in plaintiff's accounts.

Plaintiff's contention that the removal of his books from the office would cause unreasonable annoyance and expense is well taken. Defendants have indicated that they intend to have the books examined by an accountant. This can be done at plaintiff's place of business.

And now, June 6, 1959, it is ordered and decreed that plaintiff, Melvin M. Sharrer, make available to defendants at his place of business for examination, copying and auditing, the Federal income tax returns for Melvin M. Sharrer and Susanna M. Sharrer for the years 1953 through 1958; the balance sheets for D. H. Sharrer & Son for the years 1953 through 1958; the general ledger and other books of original entry for D. H. Sharrer & Son for the years 1953 through 1958; the partnership agreement between Melvin M. Sharrer and Susanna M. Sharrer, if any; the payroll records of D. H. Sharrer & Son for the years 1953 through 1958, and the profit and loss statements of D. H. Sharrer & Son for the years 1953 through 1958.

*Opinion*

SHEELY, P. J., June 6, 1959.—This is a companion action to that in which we have today filed an opinion on defendants' motion for inspection of records. In addition to their motion for inspection of records, defendants filed written interrogatories to be answered by plaintiff. Plaintiff has filed objections to the first, second, fourth and sixth interrogatories.

In the first interrogatory, defendants ask plaintiff to state the name of each employe of D. H. Sharrer & Son and the principal duty of each as of February 4, 1957. In the second interrogatory the same information is asked as of December 1, 1958. The information sought is the same as that sought in the motion to produce the payroll records for inspection with additional request for a statement of the principal duties of each employe. For the reasons stated in the other opinion, defendants are entitled to this information.

In the fourth interrogatory, plaintiff is asked to name all the banks in which checking accounts or savings accounts of D. H. Sharrer & Son were carried from January 1, 1957, to February 4, 1957. In the motion for production of records, we held that defendants were entitled to examine the books of plaintiff. An examination of the books will give them all the information to which they are entitled and an examination of bank accounts would add nothing of importance. While the bank accounts might give some indication of the extent of plaintiff's business, they would also show the extent of his savings which is not relevant.

In the sixth interrogatory, plaintiff was asked to state the gross sales of D. H. Sharrer & Son from February 6, 1957, to May 1, 1957. This information will be available to defendants upon an inspection of plaintiff's books.

And now, June 6, 1959, the objections to the first and second interrogatories are overruled. The objections to the fourth and sixth interrogatories are sustained.