# CIRCUIT COURT OF ROCKINGHAM COUNTY

Augustus G. Julias, II

v.

Brenda S. Moyers

January 5, 1998

Case No. (Law) 10958

BY JUDGE JOHN J. MCGRATH, JR.

This is a suit for personal injury arising out of an automobile accident which occurred on May 12, 1995, and in which the Plaintiff claims damages of $1,000,000.00. The matter is before the Court on the Plaintiff's Motion *in Limine* requesting, *inter alia*, to preclude any evidence being introduced at trial to show Plaintiff's income from the business he now owns and operates known as Pamela's Secrets or any reference to the revenues, expenses, profits, or losses for that business. Plaintiff also seeks to preclude evidence on the nature of the business conducted under the name Pamela's Secrets and Plaintiff's alcohol and drug use, whether past or present. It is Plaintiff's claim as expressed in his Motion and Supporting Memoranda and argument at the hearing that all of the information referred to above is immaterial, irrelevant, and, if admitted, would be highly prejudicial to the Plaintiff.

It is undisputed by the parties that at the time of the accident, the Plaintiff was the sole owner and proprietor of a car refurbishing and detailing business. Although the exact corporate form of this business is not articulated, it appears to have been a business in which Mr. Julias was the sole owner and proprietor and a business in which he did a fair amount of the physical work himself. However, it appears that the Plaintiff had as-

sorted part-time or casual employees who assisted him in the various types of car detailing and refurbishing work that he performed.

It is alleged that as a result of the accident, the Plaintiff was rendered incapable of physically pursuing his business as a car detailer and refurbisher and was required to close the business. Shortly thereafter, the Plaintiff apparently borrowed money from family members and invested in a new business which had been started by his girlfriend and which is known as "Pamela's Secrets." The Plaintiff apparently now operates this new business as a sole proprietorship or a proprietorship in conjunction with his girlfriend, and it is alleged that he works on the premises and provides managerial services and retail sales help.

Although the record is not precisely clear on this point, it appears that "Pamela's Secrets" is a purveyor of what could be casually referred to as "exotic lingerie" and assorted accessories. Although no proffer was made nor evidence introduced at the hearing, it appears that the business might be a slightly down market version of another purveyor of women's intimate apparel that operates under the name of an eminent Victorian.

The core of the Plaintiff's argument is that he is entitled to recover for personal injuries and for loss of earning capacity if he can show that such losses were proximately caused by the automobile accident. It is the Plaintiff's position that the automobile accident rendered him completely incapable of pursuing his previous career as a proprietor/operator of a car refurbishing and detailing business. In that business Plaintiff was apparently required, when doing part of the work, to engage in fairly vigorous physical activity of buffing and polishing automobiles.

It is Plaintiff's position that he is entitled to recover for his lost capacity to engage in that type of profitable activity in which the evidence will apparently show he was making somewhere in the neighborhood of $25,000.00 per year. His argument is that, after this injury rendered him incapable of operating the automobile business, he, using his business sense and acumen, borrowed money from his family and invested into the Pamela's Secrets retail business.

Plaintiff claims that he engages only on an occasional basis in handling with retail sales and stocking various items for display (presumably none of these weighing a great deal) and that his business at the trade he is carrying on as part of Pamela's Secrets requires virtually no physical activity. His claim is that he has invested money in the business and that he is earning a return on his investment and that this is not "earnings" which can be put before the jury when they are seeking to determine what, if any, damages he should receive because of his lost earning capacity.

Defendant, not surprisingly, argues that the earnings and profits that the Plaintiff is making from Pamela's Secrets are relevant to put before the jury in order for them to determine what, if any, loss of earning capacity the Plaintiff has suffered.

The Plaintiff's argument rests essentially on two separate but closely analogous principles of law. First, the Plaintiff argues that any remuneration that the Plaintiff is realizing from his ownership and participation in the activities of the Pamela's Secrets business are in the nature of earnings on an investment, and as such, they are not "earnings" which the jury can consider when attempting to reach a decision on whether or not the Plaintiff has had a loss of earning capacity. The parties have not cited the Court to any Virginia precedent in this regard, but the Plaintiff has relied upon the standard definition of "earnings" as set forth in *Black's Law Dictionary*, which is:

The price of services performed; the reward from labor or the price received for personal services, whether in money or chattels . . . . the gains of a person derived from his services or labor without the aid of capital; money or property gained by the performance of labor service or the performance of something.

*Black's Law Dictionary*, 5th ed., pp. 456-457.

The Court is referred to cases from Alabama and Pennsylvania in which those courts have held that profits derived from the management of a business are generally not considered to be earnings. *See, e.g., Wilson & Co. v. Sims*, 34 So. 2d 689 (Ala. 1948), and *Dempsey v. City of Scranton*, 107 A. 877 (Pa. 1919). *See also* Annotation "Evidence-Impaired Earning Capacity," 18 A.L.R. 3d 88, § 2(b).

Although the Court is aware that there is clearly a distinction between earnings or profits generated from the investment of capital as opposed to earnings that are generated by personal endeavor and effort, this case does not present a clear demarcation between the two lines. According to the Plaintiff's own assertions, prior to the injury, Plaintiff claims to have owned and operated an automobile reconditioning shop, and after the accident, he alleges that he has "borrowed money from his father and has opened a retail establishment operating under the name 'Pamela's Secrets'." (*See* Plaintiff's Memorandum in Support of Motion for Protective Order at page 1). Although Plaintiff argues that he does not spend a great deal of time in working at his new business, that fact has not yet been established by evidence. To the extent that the facts evolve at trial that the

Plaintiff, prior to the accident, was operating a closely-held business and that, subsequent to the accident, he opened a different sole proprietorship which engages in a different line of commerce, that does not render evidence concerning his ability to earn an income from his new retail establishment irrelevant to the jury.

The jury will be required in this case to make the always difficult assessment of what, if any, earning capacity has been lost by the Plaintiff. Given the situation that both before and after the accident the Plaintiff has been engaged in operating a small business, the evidence concerning what he is able to earn in his new line of work is something that can be considered by the jury in arriving at a determination of what, if any, loss of earning capacity he has suffered as a result of the accident.

The Court notes that this is not a situation in which the earnings being enjoyed by the Plaintiff are merely the results of his investment of capital, but there appears by all indication to be a significant element of the earnings attributable to his personal endeavors in the new business. At trial, if the Plaintiff can separate out the amount he is earning that is attributable to his own efforts from those that are attributable to the investment of capital, then he can argue to the jury that they should disregard all income which he may now be receiving which is solely attributable to the investment of capital.

The second attack the Plaintiff makes upon the evidence of his earnings from the Pamela's Secrets retail business is that it is well established in Virginia that a plaintiff is entitled to, when he has proven a causal connection, any loss of "future earning capacity," and that the facts that the Plaintiff is making as much or more money after the accident than before the accident does not mean *ipso facto* that he is not entitled to recovery for a loss of earning capacity.

It is well established in Virginia that a plaintiff is entitled to an award for a loss of earning capacity under the appropriate circumstances and that the mere fact that the plaintiff is earning an equal amount of money or a greater amount of money post-accident than he earned pre-accident is not a bar to his recovery for a loss of earning capacity. See *Exxon Corp. v. Fulgham*, 224 Va. 235 (1982); *State Farm Mut. Auto. Ins. Co. v. Futrell*, 209 Va. 266 (1968).

In turn, these cases are generally based upon the opinion of a Federal District Court sitting in Virginia in *Aivaliotis v. S.S. Atlantic Glory*, 214 F. Supp. 568 (E.D. Va. 1963). In the *Aivaliotis* case, the plaintiff was, at the time of his injuries, a Greek able-bodied seaman on a foreign flag vessel who was injured while in an American port. At the time of his injury, he

was earning 15 English pounds per month or an average monthly wage of $60.00. As a result of his injury and the amputation of his leg, the plaintiff was confined in the United States for approximately three and a half years for five operations, one of which was an amputation of his leg. At the time of the trial, the plaintiff had learned English and had apparently diligently applied himself to his studies and was conceded by everyone to have post-accident a greater ability to earn money as a resident of the United States than he would have in his previous job. The Court held that this did not automatically bar him from receiving an award of compensation for a loss of "earning capacity." The Court in *Aivaliotis* stated as follows:

> When injured, libelant was receiving 15 English pounds per month. He has an actual loss of earnings covering a period of three years and ten months. To what extent he would have advanced as a seaman during that extended period of time is, of course, problem-atical. Computing his average monthly wage at $60.00, he would have sustained a wage loss aggregating $2,760.00. We think that this computation is reasonable and conservative under the circum-stances.
>
> Libelant's misfortune has, in some respects, afforded him an opportunity to improve his station in life. During his extended pe-riod of hospitalization, he met, became engaged to, and thereafter married an American citizen of Greek origin. It is his intention to become an American citizen. He has gradually learned to speak the English language. His education is limited to 2 1/2 years of high school. Nevertheless, his overall prospects of making a higher wage in the United States are definitely better than they would be in Greece. The court cannot find that he probably will, in fact, sustain any actual loss of future earnings by reason of his impair-ment when his previous station in life is considered. However that may be, one of the measures of his damage is based upon his earning capacity and not merely the amount actually earned. *Mor-ris v. Cartwright*, 57 N.M. 328, 258 P.2d 719; 15 Am. Jur., *Dam-ages*, p. 501, § 91. Tested by these principles, there can be little doubt as to the impairment of his earning capacity. His days of performing heavy labor are at an end; he must determine to educate himself and rely upon the so-called "white collar" type of employ-ment.

These Virginia cases and a number of them from other jurisdictions (see cases set forth in annotation "Evidence-Impaired Earning Capacity," 18 A.L.R. 3d 88 (1966)) stand for the well-established proposition that the mere fact that a plaintiff is after an accident able to procure employment, whether in the same line of work or otherwise which earns the plaintiff as much or more than he earned prior to the accident, does not *per se* bar the plaintiff from seeking recovery of a loss of earning capacity.

In this case, Defendant makes no claim that Plaintiff is barred from recovering for loss of earning capacity. The Defendant simply argues that she has a right to put in evidence as to what the Plaintiff has been able to earn after the injury in order that the jury have a full presentation of the facts before it when it seeks to determine what, if any, diminution in earning capacity has been suffered by the plaintiff.

It strikes the Court that the Defendant's argument in this regard is well taken. The jury must have complete and full information before it in reaching a determination of what, if any, earning capacity the plaintiff has lost. It would simply be illogical for a case to go to the jury with the plaintiff showing that he had a certain line of employment before the accident and that the accident has barred him from pursuing that line of work without putting into evidence what other types of earnings the plaintiff is capable of generating. Granting the Plaintiff's Motion *in Limine* in this regard would simply leave the jury without adequate information upon which to determine the measure of damages for loss of earning capacity. This Court has reviewed all of the cases cited and additional cases found on the subject, and it has not yet found a case which *precludes* evidence of the Plaintiff's post-injury earnings as relevant evidence for consideration by the jury.

Therefore, the Court denies the Motion *in Limine* of the Plaintiff insofar as it seeks to preclude any evidence of the ability of the Plaintiff to earn money through the operation of the Pamela's Secrets retail operation post-accident.

Another issue on which the Plaintiff has filed a Motion *in Limine* is to preclude any reference to the fact that the Plaintiff is currently engaged in the Pamela's Secrets retail business. Although counsel for the parties and the Court all denied any personal knowledge of exactly what line of business is engaged in by the Pamela's Secrets business, as previously stated, it appears to be a purveyor of exotic lingerie and related accessories. The Court cannot foresee any reason why this particular line of retailing is in some way prejudicial to the Plaintiff.

It is not a line of business which is illegal, nor does it appear to be a business which evokes immediate condemnation by the community. Moreover, the Court does not believe that, in complex trials such as this, matters can be so antiseptically treated as to leave a complete vacuum as to what lines of work people are engaged in. Therefore, the Court denies at this point any request to preclude reference to Pamela's Secrets or its general area of activity. However, the Court will not countenance attempts by any party to prejudice the jury by seeking to put in evidence concerning the salacious details and particulars of the type of products that may be offered for sale at Pamela's Secrets.

The last issue upon which the Plaintiff moves *in limine* is to preclude any reference to his previous or present drug or alcohol abuse or the treatment he has received for the same. The parties are well aware of the general principles of law that are applicable here and that the Court will not permit the Plaintiff to be gratuitously attacked on matters which are not relevant to the proceeding at hand. However, the Defendant asserts, for example, that the Plaintiff has a history of addiction and abuse of both legal and illegal drugs and that during a good portion of the treatment that Plaintiff was undergoing for his back injury, which was caused by the accident, the Plaintiff was noted by his physicians to be repeatedly seeking inappropriate drug regimens from the treating physicians. Apparently, the evidence may disclose that certain of the treating physicians noted the Plaintiff's excessive desires to obtain certain narcotic-like drugs and that the doctors indicated a concern with their addictive propensities when administering to this individual.

It is too early at this stage to rule on this issue by way of a Motion *in Limine*. This is an issue which is more appropriately left to objection at the time of trial. There may well be situations in which examples of prior or current addiction by the Plaintiff are wholly irrelevant in determining the seriousness of his injury and what, if any, lost earnings he has had. On the other hand, it may well be that the Plaintiff's various addictive propensities may explain in whole or in part the necessity for the amount of medical treatment he received, and whether, in fact, the Plaintiff's earning capacity was diminished by the injury or whether it was diminished in whole or in part by certain self-afflicted addictions. This issue is not now ripe for a decision but will be ruled on as the evidence evolves at trial.

The Clerk is directed to send attested copies of this Opinion and Order to Donald D. Litten, Esq., counsel for the Plaintiff, and to Mark D. Obenshain, Esq., counsel for the Defendant.